# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CORY WILLIAM NELSON,

Defendant-Appellant.

UNPUBLISHED
May 14, 2015

No. 318607
Calhoun Circuit Court
LC No. 2012-003310-FC

Before: BOONSTRA, P.J., and SAAD and MURRAY, JJ.

PER CURIAM.

Defendant appeals his jury trial convictions of armed robbery, MCL 750.529, and first-degree felony murder, MCL 750.316(1)(b). The court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to life imprisonment without the possibility of parole for the felony-murder conviction and to a concurrent term of life imprisonment, with the possibility of parole, for the armed robbery conviction. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The victim, Larry Evans, lived in a home with his two sons, Terrance Evans and Ehabb Kelly. Testimony from trial indicated that Terrance kept a duffle bag containing several bags of marijuana in a locked cabinet in his bedroom. In the evening hours of August 10, 2012, Kelly and the victim were at home when Kelly, then in the basement, heard a commotion upstairs. Kelly testified that he heard someone yell "where the bag at?" He then heard what sounded like a gunshot. Kelly dialed 9-1-1 and hid behind a cabinet in the basement. Officers from the Battle Creek Police Department responded to the emergency call and surrounded the house. Multiple officers testified that they heard a lot of commotion coming from inside the house. At least one officer heard a male voice say "where's the bags, where's the f***ing bags." When the officers knocked and announced their presence, a man, whom multiple officers identified as defendant, opened the door but then immediately slammed it shut. The officers then forced entry into the home, where they apprehended defendant and three codefendants. When the officers entered the home, they discovered the victim on the floor, surrounded by blood. The victim had been severely beaten and shot once in the head. He later died from his injuries. The victim's home had obviously been ransacked and the cabinet containing the bags of marijuana had been forcibly opened. Officers discovered two handguns inside the home; DNA testing confirmed that the victim's blood was on at least one of the handguns and that one of the handguns had fired the

bullet that killed the victim. DNA testing also indicated that the victim's blood was on several areas of defendant's clothing, including his tennis shoes. The victim's blood was also found on one of the handguns; defendant could not be excluded as a donor of DNA material found on the handle of that gun.[1]

Defendant was interviewed by the Battle Creek Police Department on two separate occasions. In his first interview, defendant claimed that he was at the victim's house to buy marijuana, but denied any involvement in the crimes. He did not identify the other individuals in the home or provide any details of the events that transpired. In his second interview, defendant provided more information, but nonetheless maintained that he had no involvement in the crimes. He claimed that he and his codefendants had been at the home of Kenneth Mack on the night of the incident. At some point, the other three codefendants decided to walk to the victim's home to buy marijuana, but defendant stayed behind. Defendant eventually went to the victim's home; by the time he arrived, the armed robbery was already in progress. Defendant denied any involvement and also denied any knowledge of his codefendants' plans. He admitted that the victim's blood might be on his clothes because he "leaned over" the victim while inside the house. He further admitted that his DNA might be on one of the handguns because he had touched it earlier that evening.

In contradiction of defendant's version of events, Mack testified at trial and denied that defendant or the others were at his home on the night in question. He acknowledged having told defendant's attorney that defendant had been at his house that night, but claimed that he only did so in response to a request from defendant's girlfriend that he lie on defendant's behalf. Mack stated that, in actuality, he never saw defendant that night.

The jury convicted defendant as described above.[2] This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant argues that that the prosecution failed to present sufficient evidence to support his convictions for armed robbery and felony murder. We review challenges to the sufficiency of the evidence de novo to determine whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399; 614 NW2d 78 (2000); *People v Harverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). When we review a sufficiency challenge, we draw all reasonable inferences in favor of the prosecution and defer to the trier of fact on all credibility determinations. *Nowack*, 462 Mich at 400.

---

[1] The forensic pathologist who performed an autopsy on the victim stated that among the injuries suffered by the victim were multiple lacerations on his scalp caused by blunt force trauma, indicating that the victim was likely struck in the head with a blunt object, possibly a handgun, i.e., that he was "pistol whipped."

[2] The three codefendants, one of whom was defendant's brother, were tried separately.

The jury convicted defendant of felony-murder on an aiding and abetting theory. The elements of felony-murder are (1) the killing of a human being; (2) with the intent to kill, do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b) [here, armed robbery]. MCL 750.316(1)(b); *People v Smith*, 478 Mich 292, 318-319; 733 NW2d 351 (2007).

The aiding and abetting statute, MCL 767.39, provides that "[e]very person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried, and on conviction shall be punished as if he had directly committed such offense." "A defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offenses he intends to aid or abet." *People v Robinson*, 475 Mich 1, 15; 715 NW2d 44 (2006). Thus, to prove felony-murder under an aiding and abetting theory, the prosecution must show that defendant, while committing, attempting to commit, or assisting in the commission of the predicate felony, performed acts or gave encouragement that assisted the commission of the killing of a human being with the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result. *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003).

Defendant does not dispute that an armed robbery occurred or that the victim was killed during the course of that armed robbery. Likewise, he does not dispute that the codefendants had the malice necessary to be convicted of felony-murder. Instead, he argues that there was insufficient evidence that he assisted in the commission of the crimes or that he shared his codefendants' intent. We disagree.

Defendant was inside the home at the time the police arrived. By that time, the armed robbery was already in progress and the victim had already been beaten and shot. As noted above, the victim's blood was found on defendant's clothing, including his shoes, and defendant could not be excluded as a donor of DNA that was found on one of the guns. Moreover, after the police knocked and announced their presence, defendant opened the door, looked outside, and immediately slammed the door shut. By doing so, defendant interfered with the officers' ability to respond to the crime, hindered their ability to render aid to the victim while he was still alive, and facilitated his codefendants' attempted escape. From this evidence, the jury could reasonably conclude that defendant was an active participant in the armed robbery. See *Riley*, 468 Mich at 141. See also *People v Rockwell*, 188 Mich App 405, 411-412; 470 NW2d 673 (1991) (emphasis added) (" 'Aiding and abetting' describes *all* forms of assistance rendered to the perpetrator of a crime and comprehends *all* words or deeds that might support, encourage, or incite the commission of a crime."). One of the natural consequences of the commission of armed robbery is death. See *Robinson*, 475 Mich at 11. Therefore, there is sufficient evidence that in addition to assisting in the commission of the armed robbery, defendant "performed acts or gave encouragement that assisted the commission of the killing of a human being" and that he did so, at the very least, "with knowledge that death or great bodily harm was the probable result." *Riley*, 468 Mich at 140.

-3-

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues in his Standard 4[3] brief that his first attorney, who represented him at the preliminary examination, and his second attorney, who represented him at trial, both rendered ineffective assistance of counsel when they (1) failed to properly investigate his defense (specifically, failed to interview his brother or the other codefendants), and (2) failed to produce his brother or any of the other codefendants to testify on defendant's behalf. To preserve a claim of ineffective assistance of counsel, a defendant should move for a new trial or, in the alternative, a *Ginther*[4] evidentiary hearing. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658; 620 NW2d 19 (2000). Here, defendant did not move the trial court for a new trial or evidentiary hearing, but moved this Court to remand this matter for an evidentiary hearing, which this Court denied.[5] Thus, our review is limited to errors apparent on the record. *Id*. at 659.

Both the United States and Michigan Constitutions grant criminal defendants the right to counsel at trial. US Const Am VI; Const 1963, art 1, § 20. "[T]he right to counsel is the right to the effective assistance of counsel." *United States v Cronic*, 466 US 648, 653; 104 S Ct 2039; 80 L Ed 2d 657 (1984). Generally, to prevail on a claim of ineffective assistance of counsel, a defendant must establish both (1) that his defense counsel's performance was objectively deficient; and (2) that the deficient performance prejudiced his defense. *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). Defense counsel is presumed to be effective, *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001), and this Court will not second-guess counsel's judgment on matters of trial strategy, *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007).

With respect to defendant's first claim, it is not apparent from the lower court record that either or both of defendant's attorneys failed to conduct a proper investigation; i.e., failed to interview defendant's brother or the other codefendants. Therefore, defendant has not established the factual predicate for his claim. See *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Further, assuming that defendant's attorneys in fact failed to interview his brother or the other codefendants, defendant has failed to show that this amounts to ineffective assistance of counsel. While it is true that defense counsel has the duty to conduct a reasonable investigation into his client's case, and the failure to do so can amount to ineffective assistance of counsel, *People v Trakhtenberg*, 493 Mich 38, 52-55; 826 NW2d 136 (2012), an attorney's failure to investigate can be trial strategy, so long as such strategy is reasonable. *Id*. at 52 (citations omitted). Here, defendant has failed to overcome the presumption that his attorneys' failure (if any) to interview his brother and the other codefendants was the product of reasonable professional judgment. Importantly, no record evidence exists that his brother or the other

---

[3] A Standard 4 brief is a supplemental pro se brief filed by a criminal defendant pursuant to Michigan Supreme Court Administrative Order 2004-6, Standard 4.

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[5] See *People v Nelson*, unpublished order of the Court of Appeals, entered August 1, 2014 (Docket No. 318607).

codefendants, if interviewed, would have in fact corroborated defendant's version of events or otherwise given favorable evidence.[6]

With respect to defendant's claim that his attorneys were ineffective for failing to call any of the other codefendants to testify on his behalf, "[d]ecisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defendant has failed to overcome this strong presumption in light of the lack of record evidence that any of the proposed witnesses would have testified favorably for defendant, or indeed testified at all rather than invoked their privilege against self-incrimination. In any event, defendant was not prejudiced. The failure to call a witness does not prejudice a defendant unless that failure deprives the defendant of a substantial defense. *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Kelly*, 186 Mich App 524, 526; 465 NW2d 569 (1990). Here, defendant claims that he wished to have the other defendants (especially his brother) testify generally to defendant's lack of participation in the charged crimes, and specifically to the fact that defendant was not present when the crimes were committed, but only arrived later. However, this defense was in fact submitted to the jury by way of defendant's own statements made during his police interview. Moreover, Mack acknowledged having told defendant's attorney that defendant was at his home on the night that the crimes occurred, although he recanted this statement at trial. The jury was entitled to believe defendant if they so desired, but it is clear that they did not. Thus, defendant was not deprived of a substantial defense, and he suffered no prejudice.

Affirmed.

/s/ Mark T. Boonstra
/s/ Henry William Saad
/s/ Christopher M. Murray

---

[6] On appeal, defendant refers this Court to the affidavit of his brother attached to his motion to remand, wherein his brother asserts that defendant had nothing to do with the commission of the crime and further asserts that he wanted to testify on defendant's behalf. While this affidavit was filed with this Court, because it is not part of the lower court record, this Court may not consider it. See *Horn*, 279 Mich App at 38. Further, the affidavit does not support plaintiff's argument. In his affidavit, defendant's brother acknowledges that his attorney advised him that it was not in his best interest to testify for defendant. Accordingly, defendant's brother appears to concede that he followed his attorney's advice not to testify for defendant. Defendant's attorneys could therefore not have compelled his brother's testimony, and subpoenaing him would have been futile.