*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 25, 2019

Plaintiff-Appellee,

v

No. 344352
Shiawassee Circuit Court
LC No. 2017-009816-FC

JERALD DAN HARGROVE,

Defendant-Appellant.

Before: O'BRIEN, P.J., and FORT HOOD and CAMERON, JJ.

PER CURIAM.

Defendant pleaded guilty to third-degree criminal sexual conduct (CSC III), MCL 750.520d(1)(a), and accosting a minor for immoral purposes, MCL 750.145a. He was sentenced to serve concurrent terms of 120 to 180 months for the CSC III conviction and 23 to 48 months for the accosting a minor conviction. He now appeals by leave granted. We affirm.

## I. FACTUAL SUMMARY AND PROCEDURAL HISTORY

Defendant's convictions arose from his sexual penetration of a child who was less than 14 years old. As was later revealed at the sentencing proceeding, defendant had sexually penetrated the girl, his young sister-in-law, between 20 (his estimate) and 50 (the victim's claim) times.

At the plea-taking proceeding, the prosecutor noted that defendant would be pleading to two charges and that five other charges would be dismissed, and that the estimated guideline range would be 41 to 75 months, whereas as charged it would have been 81 to 135 months. The prosecutor emphasized "that the guidelines as indicated are merely estimated by us at this time." Defense counsel agreed that defendant was prepared to plead to the agreement as stated and that the terms were accurate "as far as [he] understand[s] them." Defendant concurred. Both defendant and his counsel denied that anything else had been promised. The trial court then questioned defendant concerning his understanding of the plea agreement, emphasized that the guidelines were an estimate, and stated that the court would "score the accurate guidelines as we get close to sentencing" and "they might be higher, they might be lower, or they may be exactly

where your attorney and [the prosecutor] estimated them to be." The court stated that the two attorneys "had been doing this for [a] long time and they're pretty good at it, but ultimately the Court will decide what the accurate guidelines are." The court noted that "*if the guidelines are higher as the Court scores them as we get close to sentencing, that would not be a basis for you to withdraw your plea.*" (Emphasis added.) Defendant affirmed that he understood, and that he had discussed his situation with his attorney and had concluded that it was in his best interests to plead guilty rather than go to trial. After confirming that defendant had gone over the Advice of Rights form, signed it after reading it, and did not have any questions about his rights, the court confirmed that defendant was willingly and knowingly waiving his rights. The court then reiterated that "the Court doesn't know what your sentence is going to be at this point." Defendant then pleaded guilty.

At sentencing, some adjustments were made to prior record variables (PRVs) and offense variables (OVs). With respect to OV 7, which addressed aggravated physical abuse, the court noted that 50 points had to be assessed for "similarly egregious conduct designed to heighten the victim's fear or anxiety during the offense." The court stated:

> Here, the victim's mother just told us that Defendant threatened the victim by saying that everyone would shun her if she reported this offense, and she continued by saying that they did. And the Presentence Investigation Report [PSIR] corroborates that by the victim herself by saying, you know, the people at school, you know they have shunned her.

> So, the conduct by the defendant, then, was designed to heighten her fear and prevent her from reporting his conduct; so, the evidence preponderates towards a scoring of OV 7 at fifty (50) points.

The court concluded that the overall suggested guidelines range on the accosting offense was 5 to 23 months and that the revision for the CSC III offense made the range 57 to 95 months. However, the court found the suggested guidelines range to be inadequate considering the severity of defendant's conduct, specifically stating that "the guidelines in this case are not reasonable." Accordingly, the court exceeded the guidelines range and imposed sentences of 23 to 48 months for the accosting conviction and 120 to 180 months for the CSC III conviction.

## II. DEFENDANT'S UNDERSTANDING OF THE PLEA BARGAIN

Defendant first claims that he pleaded guilty because of a promise that he would be sentenced within the estimated guidelines range and that because the trial court did not adhere to this promise, he is entitled to withdraw his plea or, alternatively, to specific performance of the sentencing agreement. This argument rests upon a faulty assumption: there is no evidence that defendant was promised that he would be sentenced within the estimated guidelines range in effect at the plea-taking, or within the sentencing guidelines as recalculated at sentencing. Defendant argues that because the prosecutor and the trial court both advised him of the estimated guidelines range at the time of the plea, he had a "reasonable expectation" that he would be sentenced within the estimated guidelines minimum sentence range. This was not a

fair assumption to draw from the statements of the prosecutor and the trial court. Defendant's subjective "reasonable expectation" is not the same thing as a sentence bargain.

Defendant argues that "the trial court specifically tied the bargain to the actual guidelines at the time of sentencing by informing [defendant] that even if the guidelines were different at sentencing he would not have grounds to withdraw his plea. There would be no reason to make such a statement unless the plea was specifically tied to a guidelines sentence." This argument is incorrect. Letting a defendant know that the guidelines might be incorrectly figured and that they could be higher, but that if they turned out to be higher, he would not have a basis to disavow his plea, is not equivalent to informing the defendant that his plea is tied to the estimated guidelines—it is in fact doing exactly the opposite: it is telling the defendant that his plea is *not* tied to the estimated guidelines, so if the actual guidelines turned out to be higher, he could not withdraw his plea on the basis that he pleaded to a sentence within the estimated guidelines. Therefore, the first premise of defendant's claim is incorrect and moreover, there is no indication in the record that defendant's plea was not understanding, voluntary and knowing. MCR 6.302(A); *People v Cole*, 491 Mich 325, 333; 817 NW2d 497 (2012).

Defendant next claims that he is entitled to withdraw his plea or to specific performance because his plea bargain was illusory. However, since there was no sentence agreement defendant cannot be entitled to specific performance. Neither the prosecutor, defendant's trial counsel, the trial court, nor the plea agreement document state that part of the agreement was a sentence within the estimated sentencing guidelines. Defendant was informed of the estimated guidelines ranges that applied to the added third-degree CSC charge he was pleading guilty to and of the guidelines range that was applicable to the first-degree CSC charges that were being dismissed. This enabled him to judge the value of agreeing to plead guilty to a lesser charge. Contrary to defendant's claim, there is simply no evidence in the record that defendant was promised a sentence within the estimated sentencing guidelines range. Nor has defendant submitted an affidavit from either himself or his trial counsel asserting under oath that there was such a sentence agreement. Therefore, the second premise of defendant's underlying claim has not been established. Defendant clearly was not deprived of a promised benefit and he is not entitled to withdraw his guilty plea or to specific performance of a nonexistent sentence bargain.[1]

Defendant next claims that this Court cannot find that his counsel's failure to object to the trial court's imposition of a sentence in excess of the estimated guidelines range constituted a waiver of his right to raise this issue. Defendant again assumes that there was a sentence

---

[1] Without citing any supporting authority, defendant also claims that he is entitled to specific performance "because the government is now in possession of statements made by [defendant], which would not have been available if it were not for the plea negotiations." Presumably defendant is referring to the statements he made at the plea-taking and at sentencing. Setting aside the question of whether the prosecution would be entitled to use such statements at a trial, the PSIR makes it clear that defendant had already admitted to the investigating officer that he had sexual intercourse with the victim on at least 20 occasions. The admissions defendant made at the plea-taking and at sentencing add little to these admissions that had already been made.

agreement. Counsel's lack of objection to the departure sentence is not a matter of waiver; it is evidence that there was no sentence agreement in the first place.

Finally, defendant claims that he is entitled to a sentence within the estimated or actual guidelines range or the option to withdraw his guilty plea. But defendant has failed to establish that there was a sentencing agreement and therefore, he has shown no plain error in failing to honor that agreement and has likewise not established an entitlement to any relief.[2]

### III. IMPLIED SENTENCING AGREEMENT

Defendant next asserts that he is entitled to enforcement of a plea/sentence bargain that he admits was, at best, only "implied." This claim is without merit.

First, defendant claims that his counsel preserved this issue by objecting on the record at the time of sentencing. We disagree. Defendant personally addressed the court and said nothing at all about the sentence. Defendant's counsel objected to the court's scoring of OV 7, but did not object to the court's decision to exceed the estimated guidelines range. Therefore, this issue is unpreserved. This Court reviews unpreserved issues for plain error. *People v Shenoskey*, 320 Mich App 80, 82; 903 NW2d 212 (2017). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. . . . The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. . . ." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999) (citations and text omitted).

Defendant admits that "[t]he assistant prosecutor in the instant case did not promise to recommend a certain sentence, but he informed the trial court and [defendant] of the estimated guidelines at the time of the plea and gave every indication that there would be no objection to a guidelines sentence." This Court rejects this characterization because the prosecutor made no comment, one way or the other, concerning what sentence, if any, he would recommend. The full plea bargain was that in exchange for defendant's plea to one count of accosting and soliciting a child and to the added count of CSC III, the prosecution would dismiss five of the original six counts, which included three counts of first-degree CSC. The prosecutor noted the estimated guidelines range, but made no statement at all regarding his position on the guidelines or defendant's sentence. We note that the record contains two documents related to the plea-taking: an advice of rights form from the date of the plea-taking that does not indicate anything at all about the proposed plea bargain, and a Plea Agreement with the same date that was signed by defendant and stated that he would plead guilty to CSC III and accosting a child for immoral purposes and that the prosecutor would dismiss five of the original six charges. A box before "Sentence Agreement" on the form was not checked, indicating that neither party viewed the plea agreement as encompassing a sentence agreement. Moreover, item number 5 on the form

---

[2] We review unpreserved issues for plain error. *People v Anderson*, 322 Mich App 622, 634; 912 NW2d 607 (2018).

provides a space to indicate the estimated guidelines range but, again, it does not indicate that there is any plea bargain for a sentence within the guidelines range. Absent an explicit sentence bargain, the line appears to be informational only. It informed defendant of the estimated guidelines minimum sentence range at the time of the plea and nothing more. It simply informed defendant that his guilty plea to a lesser offense would result in exposure to a reduced guidelines range—not that his sentence would necessarily be within that range. Defendant appears to recognize this because he only claims that he had a "reasonable expectation" that the prosecutor would not seek a sentence outside the estimated guidelines range.

After the prosecutor's description of the plea bargain, defendant's trial counsel stated simply, "My client is prepared to plead as [the prosecutor] just recited." Defendant was then asked, under oath, if he agreed with the statements of the prosecutor and trial counsel, and he responded affirmatively. Both the prosecutor and defendant's counsel stated that there were no other promises that had not been placed on the record. The court cautioned defendant that the guidelines were only estimated and that and that "if the guidelines are higher . . . that would not be a basis for you to withdraw your plea." The court also stated:

> And it also means that when we come back for our sentencing, . . . if you don't like our sentence—you think it's too much incarceration, or you don't like a term of probation, or you don't like [sex offender] registration, . . . that would not be a basis for you to withdraw your plea. Do you understand . . . ?

Defendant acknowledged that he understood. In light of this record, defendant cannot credibly argue that he believed the prosecutor was recommending a sentence within the estimated guidelines range and that the court was bound to give him such a sentence.

At sentencing, the prosecutor argued that the sentencing guidelines did not adequately account for the number of times defendant had sex with the victim and did not adequately account for the emotional damage defendant had caused to the victim's family. But, in the end, the prosecutor merely concluded: "So, your Honor, please fashion a sentence that addresses all of the goals of sentencing, and . . . that stresses to our community this is not tolerated." Contrary to defendant's claim, the prosecutor did not argue that the court should exceed the sentencing guidelines. The trial court stated that the guidelines in this case, as calculated, were not reasonable. When the trial court decided to depart from the sentencing guidelines, *neither* defendant *nor* his counsel interjected by claiming that there was a deal. If defendant truly believed his plea bargain called for a sentence within the guidelines range, he presumably would have done so.

Defendant relies on *People v Nixten*, 183 Mich App 95; 454 NW2d 160 (1990), where the defendant pleaded guilty in return "for a reduction in the charged offense and a promise that 'the People will recommend that the minimum sentence in this case not exceed eight years.'" *Id*. at 97. At sentencing, the prosecutor recommended a minimum sentence of seven years, 11

months, and 28 days. *Id*. at 97-98. This Court held that this was error requiring resentencing.[3] *Id*. at 98-99. Importantly, the present facts are distinguishable because the prosecutor *did not* make a specific recommendation of *any* sentence, let alone one within the estimated guidelines range. Moreover, the trial court departed from the guidelines range, so *Nixten* is not applicable. Accordingly, defendant has failed to demonstrate plain error that would justify resentencing.

## IV. ASSESSMENT OF OV 7

Defendant next claims that he was deprived of due process by the trial court's reassessment of OV 7 at 50 points. Defendant raised this claim in a timely motion to remand, thereby preserving it for appellate review. MCL 769.34(10). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

MCL 777.37 provides:
(1) Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the 1 that has the highest number of points:

(a) A victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense………………………………50 points

(b) No victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense                              0 points

(2) Count each person who was placed in danger of injury or loss of life as a victim.

---

[3] This Court subsequently disagreed strongly with the rationale of the two-judge majority in *Nixten*, see *People v Swirles* (*After Remand*), 218 Mich App 133, 139-141; 553 NW2d 357 (1996), but concluded that it was compelled to honor the holding because of a later panel's partial adoption of the *Nixten* holding in *People v Shuler*, 188 Mich App 548; 470 NW2d 492 (1991). Nevertheless, the *Swirles* Court factually distinguished *Nixten* and therefore declined to follow it. *Swirles*, 218 Mich App at 140-141. This Court in *Shuler* agreed with the *Nixten* holding, but also declined to impose resentencing because the trial court had chosen to exceed the sentencing guidelines, and the defendant had reaffirmed his plea, so the prosecutor's recommendation had no effect. *Shuler*, 188 Mich App at 550-552.

(3) As used in this section, "sadism" means conduct that subjects a victim to extreme or prolonged pain or humiliation and is inflicted to produce suffering or for the offender's gratification.

The trial court's reason for assessing OV 7 at 50 points was its conclusion that defendant's conduct "was designed to heighten [the victim's] fear and prevent her from reporting his conduct" since defendant had "threatened the victim by saying that everyone would shun her if she reported this offense." OV 7 was interpreted by our Supreme Court in *Hardy*, where our Supreme Court explained that to assess points based on the defendant's conduct being designed to substantially increase the fear and anxiety a victim suffered during the offense, the defendant's conduct must be "intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 441. The Court summarized: "The relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Id*. at 443-444. See also *People v Rodriguez*, ___ Mich App ___, ___; ___ NW2d ___ (2019) (Docket No. 338914); slip op at 4 (under circumstances in which the defendant "took no other action that could rise to the level of egregious conduct similar to sadism, torture, or excessive brutality designed to substantially increase the fear and anxiety of [the victim]," the trial court erred in assessing 50 points for OV 7). Assuming that defendant made some form of the alleged threats to the victim, the record does not indicate that he made the alleged threats during the commission of the offense with the intent to *substantially increase* the victim's fear and anxiety *during the offense*. Accordingly, the trial court did not correctly interpret or apply MCL 777.37 in deciding to assess 50 points for OV 7. When these points are subtracted from the total, defendant's total OV assessment is reduced from 115 points to 65 points, changing the suggested sentencing range. Nevertheless, defendant was not sentenced pursuant to the sentencing guidelines; instead, the trial court departed upward. In *People v Lockridge*, 498 Mich 358, 395 n 31; 870 NW2d 502 (2015), the Court stated:

> In cases such as this one that involve a minimum sentence that is an upward departure, a defendant necessarily cannot show plain error because the sentencing court has already clearly exercised its discretion to impose a *harsher* sentence than allowed by the guidelines and expressed its reasons for doing so on the record. It defies logic that the court in those circumstances would impose a lesser sentence had it been aware that the guidelines were merely advisory. Thus, we conclude that as a matter of law, a defendant receiving a sentence that is an upward departure cannot show prejudice and therefore cannot establish plain error.

Therefore, defendant is not entitled to a remand for resentencing.

## V. PROPORTIONALITY OF THE DEPARTURE SENTENCE

Finally, defendant contends that the trial court's departure sentence was not reasonable because it violated the principle of proportionality. This claim is without merit.

-7-

A sentence that departs from the sentencing guidelines suggested minimum sentence range is reviewed for reasonableness pursuant to the principle of proportionality, "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 460; 902 NW2d 327 (2017), quoting *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). In making this reasonableness determination, the reviewing court looks at "the circumstances of [the] case, the record, and the trial court's statements during sentencing." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017). A court abuses its discretion if it imposes a disproportionate sentence. *People v Rice*, 235 Mich App 429, 445; 597 NW2d 843 (1999).

In relevant part, MCL 769.34(3)(b) provides:

(3) A court may depart from the appropriate sentence range established under the sentencing guidelines set forth in [the statute] if the court has a substantial and compelling reason for that departure and states on the record the reasons for departure. All of the following apply to a departure:

* * *

(b) The court shall not base a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range *unless the court finds* from the facts contained in the court record, including the presentence report, that the characteristic has been given inadequate or disproportionate weight. [Emphasis added.]

The trial court concluded that the guidelines were assessed properly, but that it still had to impose a sentence that was "reasonable and proportionate to the seriousness of the offense and this offender, and the [c]ourt finds that the guidelines in this case are not reasonable." Initially, the court noted that because of the plea bargain, three counts of first-degree CSC, a life offense, had been dismissed. Citing *People v Armstrong*, 247 Mich App 423; 636 NW2d 785 (2001), the trial court stated that it could take into account defendant's conduct that was dismissed as part of a plea bargain. The *Armstrong* Court stated:

Defendant has an uncontrollable sexual attraction toward little boys, apparently as a result of his history of sexual abuse. The trial court did not err in finding that this factor was not adequately considered by the guidelines. . . . The trial court also did not err in finding that the need to protect other children by the sentence imposed is another factor not adequately considered by the guidelines. . . . Further, the guidelines take into account psychological injury to the victim requiring therapy, MCL 777.34, but do not take into account the violation of the victim's parents' trust in defendant, the effect on the family occasioned by the victim's loss of trust in all men, including his own father, or the effect on the victim and his sister from having to learn about sexual matters at such a young age. *We also note that the prosecutor's decision, in exchange for defendant's guilty plea, to dismiss a charge of first-degree CSC, which carries a potential life sentence, and the fact that defendant was not charged with attempted CSC for*

-8-

*trying to have the victim perform oral sex on him are additional factors that the court can consider when deciding whether departure is warranted. . . .* Therefore, the trial court did not abuse its discretion in finding substantial and compelling reasons for departing upward from the guidelines. [*Id*. at 425-426 (citations omitted and emphasis added).]

In contrast to *Armstrong*, defendant claims that dismissed charges could not be considered, citing an unpublished case. However, unpublished opinions are not precedential authority, MCR 7.215(C)(1), whereas *Armstrong*, as a published opinion, is controlling. MCR 7.215(C)(2). The trial court properly considered the fact that defendant had been subject to three life-offense counts of first-degree CSC that were dismissed by the plea bargain. Moreover, there was record support for those charges, including defendant's own admission. That defendant had sexual intercourse with a 13 to14-year-old girl, his sister-in-law, on numerous occasions, each time constituting a first-degree CSC offense, is clearly a substantial and compelling factor that supports a departure from a sentencing guidelines range that was calculated for a single CSC III offense.[4]

The court's next reason for exceeding the guidelines range was the number of times defendant had sexual intercourse with the victim. The court further noted that defendant sent nude photographs of himself to the victim and solicited nude photographs of the victim. Citing *People v Horn*, 279 Mich App 31; 755 NW2d 212 (2008), the court stated: "The [c]ourt finds that the guidelines are inadequate in this regard as they do not account for the defendant's actual established pattern and practice of repeatedly victimizing the same individual."[5] This Court in *Horn* found that "[a]n individual's established pattern of predatory conduct toward a selected victim clearly constitutes probative evidence of future behavior toward the victim." *Id*. at 47.

The court next addressed the inadequacy of OV 10 [exploitation of vulnerable victim] regarding psychological injury to the victim. MCL 777.40. The court concluded that, based on the victim's impact statement and the victim's mother's statement at sentencing, the 10 points assessed for OV 10 were inadequate: "ten (10) points just doesn't give us enough weight to

---

[4] In arguing that the trial court could not consider the dismissal of the first-degree CSC charges, or the multiplicity of first-degree CSC offenses established by defendant's and the victim's statements to the investigating officer, defendant is arguing that defendant can *only* be compared to a hypothetical defendant who committed one CSC III on a 13-year-old girl. Acceptance of this argument would be inconsistent with the principle of proportional sentencing.

[5] Defendant states: "The trial court did not state that these variables [OV 11, OV 12, and OV 13] were not afforded adequate weight in determining [defendant's] applicable range." But that is *precisely* what the court stated: "The [c]ourt finds that the guidelines are inadequate" with respect to defendant's repeated victimization of the victim. The trial court's failure to specifically use the terms "OV 11, OV 12, and OV 13" when it made its pronouncement does not overcome the fact that its statement clearly indicated its determination that those OV assessments were inadequate to reflect defendant's behavior.

reflect the extensive psychological impact that these crimes have had on the victim—I mean, not only to her own person, but she's now estranged from her sister, her sister doesn't talk to the rest of the family, and those are all things that are not accounted for under this variable." The court then noted that because the conviction offense was not a homicide, it could not assess points under OV 5 for psychological harm to the victim's family. Defendant argues that the trial court was precluded from considering this factor because the Legislature, by limiting OV 5 to homicide cases, made a policy determination that the psychological harm to a victim's family could not be considered with regard to any other type of offense. Defendant cites no authority in support of this claim, and it is clearly inconsistent with the whole sentencing system. Failure to support a claim with caselaw or legal analysis results in abandonment of the claim. *People v Johnson*, 315 Mich App 163, 199; 889 NW2d 513 (2016). Furthermore, where there is plainly support for an aggravating factor that is not considered by the sentencing guidelines, it is reasonable for the court to consider that factor in determining whether the guidelines should be exceeded. "Relevant factors for determining whether an out-of-guidelines sentence is more proportionate than a sentence within the guidelines range 'include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) *factors not considered by the guidelines*; and (3) factors considered by the guidelines but given inadequate weight.' " *People v Odom*, ___ Mich App ___; ___ NW2d ___ (Docket No. 339027; issued March 12, 2019), p 9, quoting *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (emphasis added).[6]

Defendant argues that the victim's age was accounted for in OV 10, and that a continuing pattern of criminal behavior was considered in OV 11, OV 12, and OV 13. Defendant ignores the trial court's statement that these variables were inadequate to deal with the degree of criminal conduct engaged in by defendant. Moreover, OV 10 deals with exploitation of a vulnerable victim. MCL 777.40. Defendant was assessed 15 points for this OV, which involves predatory conduct. MCL 777.40(1)(a). The age of the victim does not factor into the predatory conduct factor; it instead applies to factor (b), the exploitation of the victim's youth, which is assessed for 10 points. MCL 777.40(1)(b). Thus, the guidelines—as assessed—did not consider the victim's age in OV 10.

The court was precluded from assessing points for sexual penetrations outside the sentencing offense in OV 11. MCL 777.41(2)(a) and (b). Defendant's contention that this was considered for OV 11 is misplaced. Likewise, OV 12 concerns contemporaneous criminal acts, which the statute defines as those that occur within 24 hours of the sentencing offense and which will not result in a separate conviction. MCL 777.42(2)(a)(*i*) and (*ii*). There was no evidence of a contemporaneous criminal offense, so defendant's contention that this was considered for OV 12 is misplaced.

OV 13 addresses continuing patterns of criminal behavior and contemplates consideration of defendant's other admitted criminal sexual penetrations of the victim. However, defendant

---

[6] We acknowledge that our Supreme Court has scheduled oral argument on whether to grant the defendant's application for leave to appeal in *Dixon-Bey*. *People v Dixon-Bey*, 501 Mich 1066; 910 NW2d 303 (2018).

was only assessed 25 points for this variable based on "[t]he offense [being] part of a pattern of [unspecified] felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). The only factor that would approximate defendant's behavior is (1)(a), which involves "3 or more sexual penetrations against a person or persons less than 13 years of age." MCL 777.43(1)(a). The court could not assess this factor against defendant because it was not established that the victim was less than 13 years of age.[7] Therefore, the trial court did not abuse its sentencing discretion by determining that OV 13 did not adequately account for defendant's continuing pattern of criminal behavior; he did not simply commit at least three general felonious crimes against a person, but between 20 and 50 sexual penetrations of a 13 to 14-year-old girl.

Defendant has failed to demonstrate that the trial court abused its sentencing discretion by determining that the sentencing guidelines were inadequate to account for defendant's criminal behavior and that it was thus appropriate to depart upward from the guidelines. However, defendant also argues that even if the trial court was justified in departing from the guidelines, the court did not justify the degree of its departure.

We have determined that OV 7 was improperly assessed and that the total offense variable assessment should therefore have been 65 points rather than 115 points. The suggested minimum sentence range for defendant's CSC III conviction would therefore be 51 to 85 months. Thus, the maximum-minimum sentence within the guidelines would be 85 months or one month over seven years. The court instead imposed a minimum sentence of 120 months (10 years)—approximately 3 years longer than the sentencing guidelines would suggest.

At sentencing, after expressing its specific concerns (as detailed above), the court further stated:

> And the [c]ourt finds that the guidelines, you just can't measure these offenses in their proper context. The [c]ourt could have scored at least ninety (90) points for Offense Variables, while the grids of these offenses, well, they don't allow the [c]ourt to account for anything more than seventy-five (75), and because the guidelines do no accurately reflect the Offense Variable score, the [c]ourt finds that the guidelines, even with the [c]ourt's added OV 7, is [sic] inadequate.
>
> * * *
>
> And the [c]ourt wishes to focus this sentence on the protection of society and the deterrence of other potential sex offenders, you know, others that are similarly situated, that are contemplating whether they should engage in a selfish act, maybe they'll think twice.

---

[7] Although the victim's mother believed that defendant began having sexual relations with the victim when she was 12 years old, the victim herself stated that the acts began when she was 13 years old.

So before imposing the sentence the [c]ourt wants to state that it can best effectuate these goals by imposing the maximum sentence allowed by law under this plea agreement, and it would depart upward to reach its chosen sentence, even if the guidelines were scored differently, or if only one of the facts listed by the Court were present.

Given the magnitude of defendant's offense, the impact it had on the victim and the victim's family, the number of felonious criminal sexual assaults committed, and the young age of the victim, assessing an extra three years on the minimum sentence does not strike this Court as disproportionate. Given the nature of defendant's criminal conduct, the trial court's determination that a guidelines sentence was not adequate was a reasonable determination. The degree of departure—approximately three years beyond the maximum sentence suggested by the guidelines—is not disproportionate.[8] "[T]he key test [of proportionality] is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Milbourn*, 435 Mich at 661. "Rather than impermissibly measuring proportionality by reference to deviations from the guidelines, our principle of proportionality requires 'sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.'" *Steanhouse*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636. Contrary to these admonitions from *Steanhouse* and *Milbourn*, defendant's argument seeks to make departure from the sentencing guidelines the sole determinant of whether defendant's sentence is disproportionate. However, the trial court's statements make it clear that it was the seriousness of defendant's conduct—not the guidelines' suggested minimum sentence range—that was the deciding factor behind its sentencing decision. And given the seriousness of defendant's conduct, the record amply supports the trial court's exercise of sentencing discretion.

---

[8] This Court would compare its decision in *People v Rosa*, 322 Mich App 726, 748-749; 913 NW2d 392 (2018), where this Court concluded:

Considering the record and the trial court's statements in support of the sentence, the trial court did not abuse its discretion in departing from the guidelines when sentencing defendant. Defendant's long history of abusing KR, the presence of a child during the assault, and the damage done to a family of four children were not fully accounted for by the guidelines. We also conclude that the extent of the departure was not disproportionate. The departure was 19 months from a guidelines maximum of 281 months, a proportional increase given the nonguidelines considerations and which, in percentage terms, was an increase of approximately 7%. As a result, the sentencing departure was "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Milbourn*, 435 Mich at 636.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Karen M. Fort Hood
/s/ Thomas C. Cameron
