PEOPLE v HORN

Docket No. 274130. Submitted February 12, 2008, at Lansing. Decided
May 15, 2008, at 9:00 a.m. Leave to appeal sought.

Marvin S. Horn was convicted by a jury in the Kalamazoo Circuit
Court, Richard R. Lamb, J., of one count of kidnapping, MCL
750.349, and four counts of first-degree criminal sexual conduct,
MCL 750.520b, and was sentenced as a second-offense habitual
offender to five concurrent sentences of 40 to 60 years in prison.
The defendant appealed.

The Court of Appeals *held*:

1. The prosecution did not improperly elicit testimony from the
defendant's daughter that the victim (the defendant's estranged wife)
had stopped seeing the defendant in private places before the date of
the offenses in this case because the defendant had raped the victim
on a prior occasion. Defense counsel had already elicited testimony
from the victim that opened the door to the evidence.

2. Even if the trial court abused its discretion in denying the
defendant's request to attend his trial without leg restraints, the
defendant failed to show that prejudice had resulted from the use
of the restraints.

3. None of the defendant's claims of ineffective assistance of
counsel is supported by the record. The defendant failed to
overcome the strong presumption that his counsel engaged in
sound trial strategy.

4. The jury's verdict was not against the great weight of the
evidence.

5. The trial court did not depart from the minimum sentence
range recommended by the sentencing guidelines merely because
of a generalized concern regarding the defendant's criminal pro-
pensities. The court's departure was properly based on the objec-
tive and verifiable factor of the defendant's recurring and escalat-
ing acts of violence against the same victim. The increasing
severity of the defendant's repetitive criminal conduct toward the
victim demonstrates that the increased sentences are proportion-
ate to both the offense and the offender. The trial court did not

engage in speculation or rely on nonobjective, nonverifiable factors in imposing the sentences.

Affirmed.

SENTENCES — DEPARTURES FROM SENTENCING GUIDELINES.

A sentencing court must articulate substantial and compelling reasons for a departure from the minimum sentence range recommended by the sentencing guidelines and the reasons must be based on objective and verifiable factors; although a sentencing court's belief that the defendant is a danger to himself or herself and others is not in itself an objective and verifiable reason, objective and verifiable factors underlying the court's belief, such as repeated offenses, failures at rehabilitation, or uncontrollable urges to commit certain offenses constitute an acceptable justification for an upward departure; specific characteristics of an offense and an offender that strongly presage future criminal acts may justify an upward departure if they are objective and verifiable, and if they are not already adequately contemplated by the guidelines.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Jeffrey R. Fink*, Prosecuting Attorney, and *Judith B. Ketchum*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Marla R. McCowan*) and Marvin S. Horn *in propria persona.*

Before: WILDER, P.J., SAAD, C.J., and SMOLENSKI, J.

SAAD, C.J. A jury convicted defendant of kidnapping, MCL 750.349, and four counts of first-degree criminal sexual conduct, MCL 750.520b. The trial court sentenced defendant as a second-offense habitual offender, MCL 769.10, to five concurrent sentences of 40 to 60 years in prison.

### I. NATURE OF THE CASE

Defendant perpetrated a series of physical and sexual attacks on his estranged wife that culminated in an

attempt to have her murdered while he was incarcerated for the kidnapping and criminal sexual charges at issue here. Defendant challenges his convictions for abducting his wife and repeatedly raping her and, for the reasons stated in this opinion, we affirm his convictions without difficulty. Defendant also complains that the trial court failed to articulate a substantial and compelling reason to justify its upward departure from the recommended minimum sentence range under the sentencing guidelines. The trial court stated that "the particular danger" that defendant presented to his wife justified an increased sentence because this danger was clear from defendant's pattern of extreme violence against his wife, and the guidelines do not take into consideration a defendant's determined course of targeting a specific victim. Defendant mischaracterizes this finding as "speculation" concerning defendant's propensity for future criminal acts, and avers that this is not an objective or verifiable reason for the departure. Defendant's assertion fails to appreciate the salient and dispositive distinction between a general criminal propensity and, as here, an actual, established pattern and practice of repeatedly victimizing a targeted individual. The trial court's observation and conclusion that defendant repeatedly targeted his wife and poses a grave danger to her is based on compelling and concrete evidence, namely, defendant's repeated and relentless efforts to harm her, his vicious assaults upon her, and his efforts to kill her. Thus, contrary to defendant's characterization of the sentencing decision, the trial court did not engage in speculation or rely on nonobjective, nonverifiable factors. Therefore, we also affirm defendant's sentences.

## II. FACTS

In January 2006, defendant had dinner with his estranged wife, LH, at a restaurant in Portage. In the

parking lot, defendant grabbed LH, slid her into the bed of his pickup truck, and wrapped duct tape around her head and mouth. Defendant also taped LH's wrists and ankles and tied them together with a cable. Defendant then drove LH to a house that he was remodeling and led her upstairs where there were three sleeping bags spread out on the floor. Defendant then picked up a red-handled knife and held it to LH's throat. He ripped the duct tape off her head and, in the process, tore a chunk of hair from her scalp. He then used the knife to cut the tape from LH's wrists and to cut off her sweater, shirt, and bra. LH testified that defendant then pulled her blue jeans down, ripped off her underwear, and raped her. After he finished, defendant grabbed LH's head, pushed it toward his penis, and ordered her to perform oral sex. Defendant then pushed her onto her hands and knees and raped her again. LH stated that the red-handled knife always remained within defendant's reach. LH further testified that, after she was allowed to use the bathroom, defendant raped her again and again forced her to perform oral sex. Later, defendant, for a third time, ordered LH to perform oral sex by forcing her mouth over his penis. In the morning, defendant drove LH back to the restaurant's parking lot.

Several other incidents of defendant's violence toward LH are significant for purposes of the appeal of defendant's sentences. On November 2, 2005, defendant assaulted LH with a dangerous weapon. Further, LH testified that, in December 2005, she stopped seeing defendant in private places because he had raped her. On January 23, 2006, the trial court sentenced defendant to probation for the November assault, but the sentence proved to be no deterrent for defendant. Within a week of his sentencing, defendant committed the kidnapping and multiple sexual assaults that led to his convictions here. Moreover, on April 7, 2006, while defendant was incarcerated and awaiting trial for these

offenses, he attempted to solicit the murder of LH, and he has pleaded no contest to this charge.

### III. PROSECUTORIAL MISCONDUCT

At trial, the prosecutor asked defendant's daughter, Charlotte, whether she knew why LH had stopped seeing defendant in December 2005 and Charlotte replied that it was because defendant had raped LH. Defendant complains that the prosecutor's question elicited testimony about other acts without the provision of notice as required by MRE 404(b)(2).[1]

We reject defendant's argument because defense counsel opened the door to the evidence and, therefore, the prosecutor's question was not improper. *People v Verburg*, 170 Mich App 490, 498; 430 NW2d 775 (1988). Before Charlotte testified, defense counsel asked LH about her relationship with defendant between November 2005 and January 2006 and, specifically, about when she had met defendant in private places. LH testified, without objection, that she stopped seeing defendant in private places after he sexually assaulted her in December 2005. Thus, defense counsel had already elicited testimony about this issue and it was reasonable for the prosecutor to believe that defense counsel opened the door for his question to Charlotte about whether she knew why LH had stopped seeing

---

[1] Defendant did not preserve this claim of prosecutorial misconduct, so we review it for plain error affecting defendant's substantial rights. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001). Defendant also claims that the trial court erred when it denied his motion for a mistrial based on the prosecutor's questioning of Charlotte. We review this issue for an abuse of discretion. *People v Bauder*, 269 Mich App 174, 194; 712 NW2d 506 (2005). A trial court abuses its discretion when it fails to select a principled outcome. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

defendant in December 2005. *Id.*; *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999).

Were we to conclude that the prosecutor improperly elicited Charlotte's testimony, we would nonetheless hold that the trial court correctly denied defendant's motion for a mistrial. A trial court should only grant a mistrial when the prejudicial effect of the error cannot be removed in any other way. *People v Lumsden*, 168 Mich App 286, 299; 423 NW2d 645 (1988). The trial court instructed the jury on the proper use of the other-acts evidence, and instructions are presumed to cure most errors. *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003). Defendant has failed to establish that the trial court's instructions were insufficient to cure any alleged unfair prejudice. Moreover, a mistrial would have been inappropriate because, as discussed, LH had already testified about defendant's prior sexual assault and Charlotte's testimony was merely cumulative of LH's testimony.

### IV. DEFENDANT'S LEG RESTRAINTS

The trial court denied defendant's request to attend his trial without leg restraints and defendant complains this denied him a fair trial. However, even were we to agree that the trial court abused its discretion by denying defendant's request, defendant has failed to show that he suffered prejudice as a result of the use of the restraints. *People v Robinson*, 172 Mich App 650, 654; 432 NW2d 390 (1988). The jury never saw defendant in restraints in the courtroom and our caselaw holds that a defendant is not prejudiced if the jury was unable to see the shackles on the defendant. *People v Johnson*, 160 Mich App 490, 493; 408 NW2d 485 (1987). A cloth was placed around the defense table, and the

restraints were removed outside the presence of the jury before defendant walked to the witness chair to testify.

Defendant asserts that members of the jury saw him in leg restraints while he was being transported to and from the courtroom, but the prohibition against shackling does not extend to safety precautions taken by officers while transporting a defendant to and from the courtroom. *People v Panko*, 34 Mich App 297, 300; 191 NW2d 75 (1971). Further, when jurors inadvertently see a defendant in shackles, there still must be some showing that the defendant was prejudiced. *People v Moore*, 164 Mich App 378, 385; 417 NW2d 508 (1987), mod on other grounds 433 Mich 851 (1989). On the fourth day of trial, a deputy informed the trial court and the parties that members of the jury *may* have seen defendant in leg restraints while defendant was being transported to the courtroom. Defendant, however, chose not to question any jurors about what they may have seen. Also, on the third day of trial, when he was returning from lunch, a juror rode in the elevator with defendant but, when questioned by the trial court, the juror stated that he did not recall seeing leg restraints on defendant. Absent any indication that a member of the jury saw defendant in restraints, we are unable to conclude that defendant suffered any prejudice. *Id.* Therefore, defendant is not entitled to relief on the basis of this claim.

### V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims that he was denied the effective assistance of counsel.[2] We note that defendant asks for

---

[2] To establish his claim, defendant must first show that (1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings

a remand for a hearing under *People v Ginther*, 390 Mich 436, 442-443; 212 NW2d 922 (1973), and so that he can file a motion for a new trial on the ground that the jury's verdict was against the great weight of the evidence. We have previously denied defendant's request for a remand, *People v Horn*, unpublished order of the Court of Appeals, entered September 20, 2007 (Docket No. 274130), and we decline to reconsider defendant's request.

Because no *Ginther* hearing occurred, our review of defendant's claim of ineffective assistance of counsel is limited to errors apparent on the record. *People v Rodriguez*, 251 Mich App 10, 38; 650 NW2d 96 (2002). Therefore, we decline to consider the affidavits submitted with defendant's motion for remand. See *People v Watkins*, 247 Mich App 14, 31; 634 NW2d 370 (2001).

Defendant argues that under *United States v Cronic*, 466 US 648; 104 S Ct 2039; 80 L Ed 2d 657 (1984), he is entitled to a presumption that prejudice occurred because defense counsel failed to spend adequate time meeting with him. He also claims that defense counsel failed to personally interview defense witnesses before trial. However, these claimed deficiencies are not apparent from the record and, thus, are not subject to our review. See *People v Odom*, 276 Mich App 407, 417; 740 NW2d 557 (2007).

Defendant further contends that defense counsel failed to (1) adequately question defense witnesses about defendant's physical limitations in January 2006, (2) call other witnesses, (3) present as evidence the blue

would have been different. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001). Counsel is presumed to have provided effective assistance, and the defendant must overcome a strong presumption that counsel's assistance was sound trial strategy. *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).

jeans LH wore on the night of the assault, (4) cross-examine LH regarding inconsistencies in her statements to the investigating police officers, (5) argue that the duct tape found in defendant's truck was consistent with defendant's testimony that he and LH mutually agreed to use the tape as a restraint during consensual sex. Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), as is a decision concerning what evidence to highlight during closing argument, *In re Rogers*, 160 Mich App 500, 505-506; 409 NW2d 486 (1987). We will not second-guess counsel on matters of trial strategy, nor we will assess counsel's competence with the benefit of hindsight. *People v Rice (On Remand)*, 235 Mich App 429, 445; 597 NW2d 843 (1999). Defendant has failed to overcome the strong presumption that counsel engaged in sound trial strategy.

Defendant asserts that counsel failed to object to the prosecutor's closing remarks about defendant's pretrial silence. Defendant correctly notes that a defendant's silence after he or she has been informed of the right to remain silent under *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), may not be used as evidence against the defendant. *People v Dennis*, 464 Mich 567, 573-574; 628 NW2d 502 (2001). However, we must consider a prosecutor's comments in light of the defendant's arguments. *People v Messenger*, 221 Mich App 171, 181; 561 NW2d 463 (1997). Considering the remarks in this light, we conclude that the prosecutor did not use defendant's silence after being advised of his *Miranda* rights to argue that defendant was guilty. Rather, the prosecutor used defendant's silence to rebut defendant's argument that the police failed to adequately investigate the events of the evening in question. Counsel is not ineffective for failing to make a

futile objection, *People v Fike*, 228 Mich App 178, 182; 577 NW2d 903 (1998), and defendant has failed to establish that an objection during the prosecutor's rebuttal argument would have been meritorious.

Moreover, if we were to conclude that the prosecutor improperly commented on defendant's silence after being advised of his *Miranda* rights, we would also conclude that counsel's failure to object did not fall below an objective standard of reasonableness. Our Supreme Court has recognized that "there are times when it is better not to object and draw attention to an improper comment." *People v Bahoda*, 448 Mich 261, 287 n 54; 531 NW2d 659 (1995). Counsel may have believed that it was better not to draw the jury's attention to the fact that defendant never offered a statement to the investigating officers. Defendant has failed to overcome the strong presumption that counsel engaged in sound trial strategy. *People v Sabin (On Second Remand)*, 242 Mich App 656, 659; 620 NW2d 19 (2000).[3]

### VI. GREAT WEIGHT OF THE EVIDENCE

As noted, we deny defendant's request for remand so that he can challenge whether the great weight of the

---

[3] Defendant also asserts that counsel should have objected when the prosecutor asked Charlotte if she knew why LH stopped seeing defendant after December 2005. The record reflects defense counsel's concern about the prejudicial value of Charlotte's answer. After Charlotte finished her testimony and the trial court excused the jury for the day, counsel moved for a mistrial. Thus, counsel engaged in the strategic decision to move for a mistrial outside the presence of the jury to avoid drawing the jury's attention to Charlotte's answer. We will not second-guess counsel on matters of trial strategy. *Rice (On Remand), supra.*

Defendant also complains that counsel failed "to timely object" after members of the jury saw defendant in leg restraints. However, as previously explained, the record does not establish that any member of the jury actually saw defendant in restraints. Accordingly, defendant has failed to establish the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

evidence supported the verdict. However, we will review defendant's claim for plain error affecting his substantial rights. See *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).[4]

We disagree with defendant's assertion that LH's testimony was devoid of probative value and that the evidence weighed heavily in his favor. Defendant specifically complains that LH's testimony about the kidnapping contradicted indisputable facts and defied physical realities. Defendant maintains that, at the time of the kidnapping, he suffered physical impairments from a prior stroke, but this was not an undisputed fact. Defendant's son saw him on a daily basis and testified that defendant was physically fine. Similarly, LH testified that defendant had no weakness on his right side when she saw him in December 2006. Moreover, it does not defy physical reality that defendant would be able to lift LH into his truck and wrap duct tape around her head while she was struggling because defendant is three to four inches taller and 10 pounds heavier than LH. Nor does it defy physical reality that LH did not suffer cuts, abrasions, or marks on her throat and face when defendant cut and ripped off the tape. Moreover, though LH's trial testimony contained some inconsistencies, they did not render her testimony devoid of all probative value. *People v Lemmon*, 456 Mich 625, 645-646; 576 NW2d 129 (1998).

---

[4] The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). Conflicting testimony and questions of witness credibility are insufficient grounds for granting a new trial. *People v Lemmon*, 456 Mich 625, 643; 576 NW2d 129 (1998). Except in extraordinary circumstances, such as where testimony contradicts indisputable physical facts or physical realities, the trial court must defer to the jury's determination. *Id.* at 645-646 (citation omitted).

Because LH's testimony was not devoid of all probative value, and was not contradicted by indisputable physical facts and did not defy physical reality, we defer to the jury's credibility determination. *Id.* Accordingly, we reject defendant's claim that the jury's verdict was against the great weight of the evidence.[5]

### VII. SENTENCES

Defendant disputes the trial court's upward departure from the recommended minimum sentence range. Specifically, he complains that the trial court's reasons for departure are a matter of subjective opinion, they were already taken into account by the sentencing guidelines, and the sentences the court imposed violate the principle of proportionality. The recommended minimum sentence range was calculated under the statutory sentencing guidelines as 171 to 356 months (14 years and three months to 29 years and 8 months). The trial court exceeded these guidelines and sentenced defendant to 40 to 60 years in prison for each conviction, to be served concurrently.

Our Legislature's statutory sentencing system provides a means of calculating a minimum sentence range by scoring offense variables, which assess the egregiousness of the crime committed, and the prior record variables, which assess a defendant's history of recidivism. The purpose of this statutory scheme is to ensure a degree of consistency in sentencing defendants with comparable histories who have committed comparable

---

[5] Defendant avers that defense counsel was ineffective for failing to move for a new trial on the ground that the jury's verdict was against the great weight of the evidence. Because the jury's verdict was not against the great weight of the evidence, any motion by defense counsel for a new trial would have been futile, and trial counsel is not ineffective for failing to make a futile motion. *Fike, supra.*

crimes, while also affording the sentencing court a degree of discretion to account for the specific circumstances of the case. To preserve this balance between consistency, based on general circumstances, and discretion, based on individual situations, the Legislature provides relatively narrow grounds for departures from the sentencing guidelines ranges. Accordingly, the sentencing court must articulate substantial and compelling reasons for the departure. And, these reasons must be based on objective and verifiable factors.[6]

We review a trial court's departure from the recommended sentencing range by applying three standards. *People v Babcock*, 469 Mich 247, 264-265; 666 NW2d 231 (2003). We review for clear error the trial court's cited factors supporting its departure, we review de novo whether the factors are objective and verifiable, and we review for an abuse of discretion the trial court's determination that the factors constitute substantial and compelling reasons to depart from the recommended range. *Id.*

---

[6] The reason for departure also must irresistibly attract the attention of the court, and must be of considerable worth in deciding the length of the sentence. *People v Babcock,* 469 Mich 247, 257-258; 666 NW2d 231 (2003). To be objective and verifiable, a reason must be based on actions or occurrences external to the minds of those involved in the decision, and must be capable of being confirmed. *People v Abramski,* 257 Mich App 71, 74; 665 NW2d 501 (2003). The trial court's reason for departure may not be based on " 'an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record, including the presentence investigation report, that the characteristic has been given inadequate or disproportionate weight.' " *People v Harper,* 479 Mich 599, 617; 739 NW2d 523 (2007), quoting MCL 769.34(3)(b). To determine whether a factor was given inadequate or disproportionate weight in the guidelines calculations, a court must first determine the effect of the factor on the recommended minimum sentence range. *People v Young,* 276 Mich App 446, 451; 740 NW2d 347 (2007).

Here, the trial court articulated its reasons for the departure as follows:

[S]ubstantial and compelling cannot be something that merely reiterates or takes into account something that's already in the guidelines but perhaps in a more aggravating situation. In this case—I've read letters from family members of the defendant—they talk about an individual who, you know, they have a lot of respect for and a lot of support for him. And you may be that person to those other people . . . *but between you and your wife you are a very dangerous person as demonstrated by your conduct in this case and by your previous convictions. And as between you and your wife, you do constitute a danger.*

And I don't know what it will take to—to correct that. But I think that beyond what's been scored in the guidelines—and the guidelines have taken into account a lot of the aggravating factors of this case. But *particularly aggravating is when all this conduct is directed towards your wife* and it's within a very short and compressed time frame that these aggressive acts are carried out against her and *what's particularly compelling is while you're being held in custody for having assaulted her you're trying to hire someone to kill her.* That's staggering.

So I will deviate from the guidelines because *the guidelines don't take into account in their general approach to assessing points your repetitive acts directed towards your wife, and I don't think they take into account the particular danger you present to your wife*; and I think it's a continuing danger. [Emphasis added.]

As noted, defendant avers that the trial court's "continuing danger" reference is a subjective opinion. Although a trial court's "belief" that a defendant is a danger to himself and others is not in itself an objective and verifiable reason, *People v Solmonson*, 261 Mich App 657; 683 NW2d 761 (2004), objective and verifiable factors underlying this belief—such as repeated offenses and failures at rehabilitation—constitute an ac-

ceptable justification for an upward departure. *Id.* at 671-672. Similarly, in *People v Geno*, 261 Mich App 624, 636-637; 683 NW2d 687 (2004), this Court affirmed the trial court's upward departure from the guidelines range on the basis of the defendant's propensity to commit future sex crimes against children. The Court implicitly agreed that a mere mention of "future risk" would not constitute an objective and verifiable reason justifying an upward departure. *Id.* at 636. However, in reasoning that is equally applicable to the instant case, the Court determined that the trial court's decision was not based on a subjective perception of future risk, but on concrete factors that established a firm probability of future offenses, namely, the defendant's past criminal history, his past failures at rehabilitation, and his admission that he was sexually attracted to children. *Id.*; see, also, *People v Armstrong*, 247 Mich App 423, 425; 636 NW2d 785 (2001).

The teaching of *Solmonson, Geno,* and *Armstrong* is that specific characteristics of an offense and an offender that strongly presage future criminal acts may justify an upward departure from the recommended sentencing range if they are objective and verifiable, and if they are not already adequately contemplated by the guidelines. Although a trial court's mere opinion or speculation about a defendant's general criminal propensity is not, in itself, an objective and verifiable factor, objective and verifiable factors underlying that conclusion or judgment are not categorically excluded as proper reasons for an upward departure. These factors include a history of recidivism, and obsessive or uncontrollable urges to commit certain offenses.

Here, contrary to defendant's assertions, the trial court did not merely opine that defendant is likely to harm his wife in the future. Rather, the trial court

stated that defendant's repeated perpetration of vicious acts against his wife within a short period was a "particularly aggravating," "particularly compelling," and "staggering" factor.[7] The trial court emphasized that defendant's incarceration while awaiting trial for the instant offenses did not dissuade him from continuing his course of merciless aggression against his wife, because he tried to solicit her murder while he was incarcerated. Defendant's determined course to terrorize and abuse his wife, clearly evident from the recurring and escalating acts of violence, is an objective and verifiable reason that is based on occurrences external to the sentencing judge's mind, and capable of being confirmed. *People v Abramski,* 257 Mich App 71, 74; 665 NW2d 501 (2003).

Furthermore, the factor of repetitive acts of escalating violence against a specific victim is not adequately considered by the guidelines. Neither offense variable

---

[7] The Department of Corrections prepared defendant's presentence investigation report. See MCR 6.425. Although these reports are usually restrained in their assessments of offenders, this report understandably expresses anxiety for LH's safety, stating:

Defendant has an alarming criminal pattern towards the victim, being his wife in the instant offense, also his wife being the victim in the prior [solicitation of murder] conviction and his wife being the victim in the previous probation term [for felonious assault]. The Michigan Department of Corrections has many concerns for the protection of [LH]. He has already demonstrated an ability to recruit unknown persons to act out his wishes to harm and even kill her. He has no remorse for his negative actions based on his continued criminal behavior, and definitely no regard for the well being of his wife and mother of his children.

It should be noted that if/when the Defendant paroles, the victim needs to be contacted regarding his release for her own safety and protection. The Defendant appears to have built an obsessive rage inside himself and will apparently act upon it regardless of any barriers or even the laws that govern him.

(OV) 7, MCL 777.37, aggravated physical abuse, nor OV 13, MCL 777.43, continuing pattern of criminal behavior, considers that the defendant's aggression targeted a specific individual, or that the degree of violence increased. Similarly, none of the prior offense variables, MCL 777.50-777.57, takes into consideration the defendant's recurring and escalating course of violence against a selected victim. The trial court did not clearly err in finding that "the guidelines don't take into account in their general approach . . . repetitive acts directed towards [defendant's] wife . . . ."[8]

In sum, the trial court did not err in finding that defendant's repeated criminal assaults upon his wife and his relentless attempts to brutalize and kill his wife presage future violence and aggression. An individual's established pattern of predatory conduct toward a selected victim clearly constitutes probative evidence of future behavior toward that victim.[9] Accordingly, anticipatory harm based on an established pattern of violence toward a specific victim is an objective and verifiable

---

[8] We note that the concurring judge in *People v Havens*, 268 Mich App 15, 19; 706 NW2d 210 (2005) (O'CONNELL, P.J., concurring), commented that the sentencing court's classification of the defendant as "dangerous" and a "serious threat" does not constitute "an objective finding of any factual event, but a statement of personal opinion." However, the trial court's determination in *Havens* was not based on a history of criminal conduct or failed attempts at rehabilitation, or on any other objective and verifiable indicia of propensity for future crime. Rather, it was apparently based on the court's subjective perception of the egregiousness of the sentencing offense. *Id.* at 18. Furthermore, the trial court in *Havens* was concerned generally about the defendant's future drug-dealing activities, whereas the court here was specifically concerned about defendant's persistent course of terror against his wife. Consequently, the concurring judge's statement in *Havens* applied to circumstances that are materially distinct from the circumstances here.

[9] Indeed, the laws governing the issuance of personal protection orders, MCL 600.2950 and 600.2950a, are predicated on the assumption that a stalker's course of aggression will persist.

factor, not a speculative prediction. The trial court did not depart from the guidelines merely because of a generalized concern regarding defendant's criminal propensities. Rather, the trial court's departure was based on the objective and verifiable factor of defendant's recurring and escalating acts of violence against LH. Furthermore, the increasing severity of defendant's repetitive criminal conduct toward LH demonstrates that the increased sentences are proportionate to both the offense and the offender. Accordingly, the court's upward departure from the guidelines is fully justified and entirely consistent with Michigan law.

Affirmed.