*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MILTON JEROME BAYTOPS,

        Defendant-Appellant.

UNPUBLISHED
January 21, 2021

No. 350367
Alpena Circuit Court
LC No. 19-008977-FH

Before: REDFORD, P.J., and MARKEY and BOONSTRA, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of two counts of delivery of less than 50 grams of heroin, MCL 333.7401(2)(a)(*iv*), and one count of conspiracy to deliver less than 50 grams of heroin, MCL 750.157a; MCL 333.7401(2)(a)(*iv*). He was sentenced as a fourth-offense habitual offender, MCL 769.12, to serve 5 to 20 years' imprisonment for each conviction. Defendant was also ordered to pay restitution. We affirm the convictions but vacate the order of restitution and remand for amendment of the judgment of sentence to eliminate the restitution provision.

## I. BACKGROUND

This case arose out of controlled drug purchases that occurred after defendant arrived from Detroit and set up a narcotics operation in the Alpena area utilizing three female drug addicts to assist him in distributing heroin. Defendant sold the heroin out of a home where he was staying that belonged to one of the women, Aaron Bissonette. The female coconspirators, including Wendy Macleod, would walk to "the Admiral" to deliver defendant's heroin to purchasers and then return to the home. The police began conducting surveillance of the home after having developed some leads in regard to several area overdoses. An officer testified that activity at the home appeared suspicious because "they come out the house, they meet somebody[,] and they go back." While in route to the home after a heroin delivery at the Admiral, Macleod was arrested on an outstanding warrant. Macleod agreed to act as an informant for the police, and officers sent her to the home with $100 to obtain heroin from defendant. Macleod returned to the police with heroin purchased with the money, and the police again sent her to defendant with an additional $100 to

buy more heroin. As before, Macleod returned with heroin purchased with the funds. Macleod wore a recording device during the controlled buys, but the audio was muffled. Pursuant to a warrant, police searched the home and found the money they had given Macleod in defendant's wallet.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that he was denied the effective assistance of counsel in multiple instances. Whether counsel was ineffective presents a mixed question of fact and constitutional law, and factual findings are reviewed for clear error, whereas questions of law are reviewed de novo. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *People v Carbin,* 463 Mich 590, 599-600; 623 NW2d 884 (2001), the Michigan Supreme Court recited the well-established principles governing a claim of ineffective assistance of counsel:

> To justify reversal under either the federal or state constitutions, a convicted defendant must satisfy [a] two-part test . . . . First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. Second, the defendant must show that the deficient performance prejudiced the defense. To demonstrate prejudice, the defendant must show the existence of a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Because the defendant bears the burden of demonstrating both deficient performance and prejudice, the defendant necessarily bears the burden of establishing the factual predicate for his claim. [Citations and quotation marks omitted.]

An attorney's performance is deficient if the representation falls below an objective standard of reasonableness. *People v Toma*, 462 Mich 281, 302; 613 NW2d 694 (2000).

The prosecutor asked witnesses questions and elicited testimony regarding the strength of the heroin being sold, the act of cutting heroin with fentanyl, area overdoses and deaths caused by heroin or heroin mixed with fentanyl, defendant's perceived callousness and indifference with respect to heroin overdoses and deaths, and implicit tenuous links between drugs defendant sold and overdoses.[1] Defendant argues that the testimony was inadmissible for a variety of reasons and that trial counsel was ineffective for failing to object to the line of questioning. While some of the testimony may have been relevant to explaining why the police were surveilling the home in which defendant was residing, which led to Macleod's participation in the controlled buys, most of the testimony was irrelevant to the charges and whether defendant engaged in delivering drugs as part

---

[1] The heroin seized by the police in this case tested negative for fentanyl.

of the controlled purchases or otherwise conspired to sell heroin.[2] The irrelevancy is especially true concerning the testimony about heroin-fentanyl overdoses and deaths and defendant's callous and indifferent attitude regarding overdoses and the harm caused by heroin trafficking. Indeed, the testimony was inflammatory and appears to have been an attempt to appeal to the jurors' sympathies, emotions, and sense of civic duty. This was not a case charging delivery of controlled substances causing death, MCL 750.317a. Any minimal probative value of the evidence, MRE 401-402, was substantially outweighed by the danger of unfair prejudice, MRE 403. Counsel should have objected to the questioning and testimony.

While we find the introduction of the evidence problematic, we cannot conclude that defendant has demonstrated the requisite prejudice to succeed on the claim of ineffective assistance of counsel. The testimony of Bissonette and Macleod that defendant was selling heroin from the home, the police surveillance of the home revealing suspicious activity, the evidence of the controlled purchases of heroin, and the discovery of the money used in the purchases in defendant's wallet constituted compelling evidence of defendant's guilt. Consequently, reversal is unwarranted.

Defendant next argues that trial counsel was ineffective for failing to object to testimony by a coconspirator, Bissonette, that she had pleaded guilty to conspiring with defendant to deliver heroin. "[A] plea of a codefendant or an accomplice is not evidence of a defendant's guilt . . . ." *People v Manning*, 434 Mich 1, 14; 450 NW2d 534 (1990). But "the guilty plea of an accomplice is admissible for impeachment or rehabilitation, where its use is appropriately limited." *Id*. In the present case, the fact that Bissonette pleaded guilty to conspiracy to deliver drugs as part of a plea agreement was initially presented to the jury as impeachment evidence during cross-examination. Subsequently, on redirect examination, the prosecutor asked Bissonette with whom had she conspired, and she responded that she had pleaded guilty to conspiring with defendant. During closing arguments, the prosecution emphasized that Bissonette "plead[ed] guilty to making arrangements to have the defendant bring up heroin." Even assuming any impropriety by the prosecutor with respect to the testimony and closing argument, we find it evident that there was no prejudice: Bissonette testified to her participation with defendant in selling and delivering heroin, which testimony is not challenged on appeal; therefore, the additional testimony that she pleaded guilty to conspiring *with defendant* to sell drugs truly added little to nothing on a substantive level. We also suspect that the jury would likely have assumed that defendant was Bissonette's coconspirator relative to her plea even had she not specifically testified to that fact. On top of that is the strong evidence of defendant's guilt alluded to and described by us above. Reversal is unwarranted.

Next, a prosecution witness, who is white, alleged that defendant, who is black, made inculpatory statements while they were both incarcerated in the county jail. Defendant argues that counsel was ineffective for failing to impeach the jailhouse informant with evidence that he has a

---

[2] Pursuant to MCL 333.7401(2)(a)(*iv*), the elements of delivering less than 50 grams of heroin are (1) delivery; (2) of an amount less than 50 grams; (3) of heroin; (4) with knowledge that the delivered substance was heroin. See *People v Collins*, 298 Mich App 458, 462; 828 NW2d 392 (2012).

tattoo on his shoulder depicting a burning cross. Defendant states, "While an innocent explanation [for the tattoo] might exist, and we are *not* accusing [the informant] of being a white supremacist, the image of a burning cross is one of the most potent of hate symbols."

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). "We will not second-guess counsel on matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight." *Id.* We cannot, however, insulate the review of counsel's performance by simply calling it trial strategy. *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Initially, this Court must determine whether strategic choices were made after less than complete investigation, with any choice being reasonable only to the extent that reasonable professional judgment supported the limitations on investigation. *Id.*; see also *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015).

Trial counsel did assail the jailhouse informant's credibility on multiple grounds. Counsel cross-examined the informant about his criminal history and asked how it was possible for the informant to have had a jailhouse conversation with defendant regarding the muffled audio recording of the controlled buys when the audiotape had not yet been brought to defendant's attention when the alleged jailhouse conversation occurred. While defendant's attorney did not cross-examine the informant about his tattoo, he did cross-examine him about racial bias by asking the informant if he had used a racial slur against another inmate. Assuming the tattoo should have been a subject of inquiry on cross-examination, we find that defendant, once again, cannot establish any prejudice. Indeed, defendant himself is not even prepared to accuse the informant of being a white supremacist based on the tattoo. In light of the strong evidence of defendant's guilt and the questionable impeachment or bias value of the tattoo, defendant has not demonstrated the existence of a reasonable probability that but for counsel's presumed error, the result of the proceeding would have been different—confidence in the outcome has not been undermined. *Carbin*, 463 Mich at 600.

Finally, defendant argues that trial counsel, in three instances, placed "incoherent testimony before the jury that might have been exculpatory." He first contends that Macleod initially testified that she became a police informant before she met defendant but then later testified that she became an informant after meeting defendant. Defendant maintains that counsel ignored the inconsistency, that Macleod's role as an informant plausibly predated her introduction to defendant, and that defendant "was merely a foil" for Macleod to work off her own criminal liability. We find that defendant misconstrues Macleod's testimony. She did not testify that she became an informant before she met defendant; rather, she simply testified that she decided to make a change in her life before she became an informant. The factual predicate for defendant's claim thus fails and, therefore, we reject the ineffective assistance argument. *Carbin*, 463 Mich at 600. We also note the wholly speculative nature of defendant's argument, which is riddled with unreasonable and farfetched inferences.

Next, defendant builds an argument around the circumstances involving the jailhouse informant. As noted earlier, the informant was confronted by defense counsel with the assertion that defendant had not yet heard the muffled audiotape at the time that defendant allegedly spoke to the informant, yet the informant testified that defendant mentioned and referred to the audiotape. The prosecution on redirect examination countered that defendant had previous attorneys,

insinuating that defendant had heard the muffled audiotape by the time of the conversation with the informant because earlier counsel may have supplied defendant with the audiotape. Defendant now complains that his attorney never established the date that defendant actually received or first heard the audiotape. We initially point out that defendant himself on appeal does not even make any claim regarding when he first received or heard the audiotape. Moreover, defendant fails to deny that he was given the audiotape by one of his attorneys before the alleged discussion between defendant and the jailhouse informant. Also, defendant does not explain how trial counsel should have proven when defendant first obtained or heard the audiotape. Defendant has not shown that further exploration of the issue would have actually benefitted him. Neither the factual predicate for the claim nor the requisite prejudice has been demonstrated. *Carbin*, 463 Mich at 600.

With respect to the third instance in which counsel allegedly allowed incoherent testimony to stand without explanation, defendant argues that the testimony by a police officer upon being recalled as a witness by defense counsel was "utterly incoherent." Defendant is apparently referring to an exchange in which trial counsel asked the deputy if another witness had overdosed. The prosecution argues that this testimony was clearly offered to rebut the witness's testimony that she had not overdosed following the events from which the charges arose. Defendant provides no elaboration on his one sentence argument. He has not demonstrated deficient performance or prejudice.

In sum, defendant's arguments of ineffective assistance of counsel, individually or together, mainly fail because prejudice cannot be shown.

## III. RESTITUTION

Finally, defendant argues, and the prosecution concedes, that the trial court erred by ordering defendant to pay $200 in restitution. We agree. It is undisputed that the police recovered the $200 in buy money while searching the home and defendant's wallet. Therefore, defendant should not have been ordered to pay restitution for this amount. See MCL 780.766.

We affirm the convictions but vacate the order of restitution and remand for the limited purpose of amending the judgment of sentence to eliminate the restitution provision. We do not retain jurisdiction.


/s/ James Robert Redford
/s/ Jane E. Markey
/s/ Mark T. Boonstra

-5-