*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MENDEL MARK MOORE,

        Defendant-Appellant.

UNPUBLISHED
August 17, 2023

Nos. 361757; 361762
Wayne Circuit Court
LC Nos. 19-001972-01-FC;
           19-002884-01-FC

Before: BOONSTRA, P.J., and LETICA and FEENEY, JJ.

PER CURIAM.

In these consolidated appeals, defendant appeals by right his resentencing for his jury-trial convictions of two counts of delivery of less than 50 grams of fentanyl, MCL 333.7401(2)(a)(*iv*), one count of tampering with evidence, MCL 750.483a(6)(b), and one count of concealing the death of an individual, MCL 333.2841(3). The trial court originally sentenced defendant, as a fourth habitual offender, MCL 769.12, to serve concurrent prison terms of 20 to 40 years for each fentanyl-delivery conviction, 6 to 20 years for the tampering-with-evidence conviction, and 4 to 20 years for the concealing-death conviction. Following a remand for resentencing, the trial court sentenced defendant to prison terms of 10 to 40 years for each of the delivery convictions, 6 to 20 years for the tampering conviction, and 4 to 20 years for the concealing-death conviction. We affirm.

## I. BACKGROUND

For many years, Defendant supplied heroin for others to package and sell at a duplex in Detroit. Defendant's product was known as the "good stuff" because of its potency. William Coffey, a regular customer who purchased and used drugs with one of the sellers at the home, died after using drugs purchased at that location. According to the evidence, while defendant was present, persons involved in the drug-sales operation placed Coffey's body in a van and disposed of it. Acting on a tip, the police discovered the body in a garbage-strewn area near the subject premises.

Another man, Kyle Vasicek, also purchased drugs at defendant's operation and died after consuming them at home. The physician who performed autopsies on Coffey and Vasicek concluded that each died from an overdose of fentanyl and acetylfentanyl. The police conducted a controlled purchase of heroin at the duplex then searched the premises, finding illicit drugs and related contraband. Defendant was tried in connection with the deaths of Coffey and Vasicek, and, in each case, the jury found defendant not guilty of delivery of a controlled substance causing death but guilty of the other charged offenses.

Defendant appealed, and this Court affirmed defendant's convictions but remanded for resentencing because the trial court had considered acquitted conduct when assessing the offense variables. *People v Moore*, unpublished per curiam opinion of the Court of Appeals, issued November 23, 2021 (Docket Nos. 352833 and 352873), pp 3-6.

On appeal after resentencing, defendant argues that the trial court abused its discretion by imposing unreasonable and disproportionate sentences for the fentanyl-delivery convictions whose minimums exceeded the recommended range under the sentencing guidelines.

## II. STANDARD OF REVIEW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). A sentence that departs upward is reviewed for an abuse of discretion, and this Court considers whether the sentence violated the principles of reasonableness under the proportionality test. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). A trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

## III. DEPARTURE SENTENCE

When imposing a sentence, a court must use the sentencing guidelines. MCR 6.425(D). This requires the court to score the sentencing variables, calculate the recommended range for the minimum sentence, and take that range into consideration when determining a sentence. *Lockridge*, 498 Mich at 391-392. The court is not obligated to impose a sentence within that range, *id.* at 365, and may depart from that range without stating substantial and compelling reasons for doing so, *id.* at 392.

In this case, the guidelines range for the sentencing offense, delivery of less than 50 grams of fentanyl, was 19 to 76 months (6 years, 4 months), and the trial court sentenced him to serve a minimum of 10 years. Thus, defendant's minimum sentence was a 44-month (3 years, 8 months), or 58%, upward departure.

Defendant argues that the trial court did not provide a justification for the extent of the departure sentence. We disagree.

The trial court explained as follows:

It is undisputed that [the subject house] in the city of Detroit . . . was an ongoing and thriving drug house, so much so that there were at least three additional men hired to keep an eye on things, to manage the place, to provide security and to take out the trash, including a dead body . . . .

The testimony . . . established that [defendant] stopped by his business at [the subject house] almost every night and sometimes multiple times throughout the day. As the Court previously found and underscored, [defendant], you did not stop by to check on your brother who worked there and you did not stop by to check on your childhood friend, Guela Cole, both struggling addicts.

They were employed by you and instead you came by to collect unearned and untaxed money. [Defendant], this business afforded you a lifestyle to purchase luxury cars and to provide handsomely to [sic] you and your family.

Instead, you stopped by to pick up money, check on the supply and to deliver more poison, further underscoring that the original presentence investigation report find[ing]s that you were unemployed and have little to no work history.

[Defendant's] relationship to the criminal justice system allows for the conclusion that you have not benefitted from past rehabilitation efforts including prison and probationary terms closed without improvement.

This was previously outlined and, again, I incorporate those paragraphs in my entire previous sentencing statements into this hearing.

The original presentence investigation report provided no evidence to suggest that you, [defendant], sought self improvement by way of counseling, education or employment skills. There is no evidence to suggest that notwithstanding multiple years of probation, two years of incarceration, that that caused you to reflect on your need to change your behavior.

Instead your criminal record continued to grow. [Defendant], you turned a blind eye to the lives that were being destroyed and the neighborhood you were destroying because of your business . . . .

I believe it's also important to underscore the math. Guela Cole testified that she lived and worked there for on or about four years. She also testified that she sold upwards of a hundred packs of heroine [sic] per day. Heroine [sic] with Fentanyl. A hundred packs a day times three hundred and sixty-five days a year, times four years is staggering mathematics and each individual packet continued to contribute to a slow and painful death to those individuals buying the same.

[Defendant], this allows for the conclusion that you refused to rehabilitate yourself and allows for further conclusion that society was not safe and is not safe with you in it.

Defendant argues that the trial court considered factors already accounted for in the scoring of the guidelines. Our Supreme Court in *People v Milbourn*, 435 Mich 630, 660; 461 NW2d 1 (1990), cautioned, "A departure from the recommended range in the absence of factors not adequately reflected in the guidelines should alert the appellate court to the possibility that the trial court has violated the principle of proportionality and thus abused its sentencing discretion." However, the trial court explained as follows:

The guidelines for the delivery convictions do not take into consideration that [defendant] ran a drug house for a minimum of four years, a drug house so successful that he needed to employ a number of individuals both to service the large volume of patrons and to provide ongoing security for this illegal operation and perhaps I should underscore what I've read previously, upwards of a hundred packs a day every day times four years. Staggering.

. . . Mr. Moore closed his eyes to the destruction of his childhood friend Guela [Cole] and other employees who he, frankly, held hostage linked to the poison in the substandard shelter he provided. For years [defendant] closed his eyes to the carnage of this drug house to every person who knocked on his door and the drug house that was forced upon the neighbors who lived nearby.

For years, [defendant], you closed your eyes to the obvious destruction of human life. Instead you sought out greater profit by providing a more lethal concoction of heroine [sic] and Fentanyl . . . .

[T]his record reflect[s] testimony about wanting the good stuff and forget the color of the packet that was known to be [defendant's] good stuff. Therefore, the Court continues to conclude that the guidelines for delivery convictions do not accurately reflect the seriousness of these offenses.

Additionally prior attempts at probation, jail terms levied and prison term has not demonstrated a change to [defendant's] behavior. [Defendant] has five prior low severity felony convictions. [Prior Record Variable (PRV)] 2 stop[s] at four prior low severity convictions.

Thus, one of [defendant's] prior low severity felony conviction[s] is not accounted for in the scoring of the guidelines. The Court must also underscore that [defendant] was convicted of four felonies, thus, the twenty point scoring on PRV-7 does not account for the third concurrent felony conviction. His previous conviction of possession of controlled substance in 2014 has now escalated to two cases of delivery of a controlled substance, but perhaps most importantly [defendant's] character, integrity did not temper his behavior.

[Defendant's] absence of a moral decency allows for the conclusion that the guideline sentence on delivery does not reflect the danger of [defendant's] presence in society. For the reasons previously articulated . . . and today's reasoning, a sentence outside of the guideline range on delivery convictions is more proportionate to the offense and the offender in this case.

Defendant notes that the "sentencing guidelines already take into account [defendant's] past criminal behavior and [he] had a habitual 4th notice." The trial court thoroughly explained why the sentencing guidelines accounted for less than the entirety of defendant's previous convictions. Most importantly, the court noted that defendant's record of "prior attempts at probation, jail terms levied and prison term has not demonstrated a change to [defendant's] behavior." And no sentencing variable accounts for a defendant's prospects for rehabilitation that the trial court reviewed and considered. Therefore, defendant has not shown that the trial court errantly based its departure on variables that the guidelines already, and adequately, considered.

Defendant argues that the trial court's statement that defendant lacked moral decency was not an objective and verifiable reason for a departure. This objection is inapt, because, since *Lockridge*, 498 Mich at 364-365, a sentencing court no longer needs objective and verifiable reasons for imposing a departure sentence.

Defendant additionally argues that the court's statement that defendant lacked moral decency indicated that bias influenced the decision. In *Milbourn*, 435 Mich at 645, the Supreme Court commented that, although "a measure of subjectivity in judicial decisions is unavoidable," a sentencing decision should not be based on completely subjective personal value judgments. Nevertheless, the background of the offender remains an important consideration in sentencing. See *People v Steanhouse*, 313 Mich App 1, 45; 880 NW2d 297 (2015). The trial court's statement that defendant's "absence of a moral decency allows for the conclusion that the guideline sentence on delivery does not reflect the danger of [his] presence in society" was a summation the court offered upon concluding that a departure sentence was in order. The court discussed its reasons at length, including defendant's history of drug involvement, his failures at opportunities for rehabilitation, the large volume of drug sales over an extended time, and the destructive effects of drug consumption to users including his brother and childhood friend, the persons defendant engaged in order to profit from his crimes, and the community in general.

Defendant argues that the statements regarding his character ignored the letters of support from his mother and two daughters, and his positive record while incarcerated. The trial court's judgment was well grounded in the record, including the testimony regarding the sentencing offense that the court heard at trial. The statement regarding defendant's character did not pertain to a particular sentencing factor, but rather was the culmination of the factors the trial court highlighted. As the court stated, it was "[f]or the reasons previously articulated . . . and today's reasoning" that the court issued the departure sentence.[1]

The reasonableness of a sentence is determined by evaluating whether " 'that sentence violate[d] the principle of proportionality, which require[s] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636. This Court recited several factors bearing on the proportionality of a sentence:

---

[1] Because the trial court stated that the reasons it had previously set forth were a part of the justification of the instant sentence, we take judicial notice of the reasons articulated at the original sentencing.

(1) the seriousness of the offense, (2) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation, and (3) factors that were inadequately considered by the guidelines in a particular case. [*Steanhouse*, 313 Mich App at 46 (citations omitted).]

A court should also take " 'into account the nature of the offense and the background of the offender.' " *Steanhouse*, 313 Mich App at 45, quoting *Milbourn*, 435 Mich at 651.

We conclude that the challenged departure sentence was within the range of reasonable and principled outcomes. In *People v Horn*, 279 Mich App 31, 44-45; 755 NW2d 212 (2008), this Court stated that "repeated offenses and failures at rehabilitation" may "constitute an acceptable justification for an upward departure." This Court elaborated that it is permissible to base a departure sentence "on concrete factors that established a firm probability of future offenses, namely, the defendant's past criminal history, [and] his past failures at rehabilitation." *Horn*, 279 Mich App at 45. The key holding of *Horn* was that "specific characteristics of an offense and an offender that strongly presage future criminal acts may justify an upward departure from the recommended sentencing range if . . . they are not already adequately contemplated by the guidelines." *Id.*

Defendant takes issue with the trial court's determination that he had poor prospects for rehabilitation, pointing out that he defendant had apologized and acquired only one misconduct while incarcerated. The trial court acknowledged defendant's efforts, but viewed defendant's potential in light of his long history of criminal conduct interspersed with judicial intervention. The court listed defendant's previous convictions not as reasons themselves for the departure, but as facts relating to the court's concerns over defendant's repeated failures at rehabilitation.

Further, another basis for the trial court's justification for the departure was the destructive impacts of the sentencing offense on the affected persons and community. Defendant's users included a person who died at the subject drug house, whose death defendant was convicted of concealing. The trial court highlighted the "staggering" amount of potentially lethal packets of drugs that the testimony showed that defendant provided for packaging and sale, and how defendant displayed indifference to those concerns.

Defendant argues that the trial court's statements indicated that it erroneously judged defendant's character negatively and used that assessment as a basis for the departure. In particular, defendant asserts that the court mischaracterized defendant's relationship with Guela Cole as a childhood friend whom he exploited rather than as a mere acquaintance. But Cole testified that she had known defendant "since we was young," meaning 15 or 16 years old or "younger than that," and that "all of us grew up together." Despite Cole's not being asked to define her relationship with defendant, it is apparent that she had a relationship with defendant as they grew up together. Defendant argues that he was not responsible for Cole's decisions to use illegal drugs or associate with the subject drug house, but Cole testified that defendant routinely supplied large amounts of crack cocaine and heroin for her to package and sell at that location, which was

also reported in the presentence investigation report (PSIR),[2] and which indicates that defendant was no passive observer of Cole's plight.

Defendant also argues that the trial court mischaracterized his role in the drug house by stating that defendant owned and operated it, and that Cole had sold only his drugs there for four years. Defendant points out that the evidence indicated that Cole sold other suppliers' drugs as well, so other suppliers contributed to what went on at the subject drug house. The trial court referred to the drug house as defendant's business, rather than a place that he owned, which was supported by Cole's testimony that defendant frequently delivered drugs to her at that location for her to package and sell. Further, the court acknowledged that others were involved in those operations, and also that the actions of other suppliers were not properly a consideration when fashioning an individualized sentence for defendant. Further, the PSIR specified, consistent with Cole's testimony, that Cole was active at that location for four years.

Defendant additionally disputes the characterization of the drug house as providing substandard housing, but this argument is belied by the testimony that drugs were sold and consumed at the house to the extent that illicit drug activities dominated the premises.

Defendant has thus failed to show that any of the trial court's statements were clearly erroneous, or, more importantly, how any alleged misstatements might have affected the departures sentences that, as the court laboriously explained, were based on defendant's high rate of recidivism despite numerous opportunities for reform, and the "staggering" volume of delivery of dangerous substances underlying those convictions.

Defendant also argues that the trial court indicated that it issued a disproportionate sentence by it blaming him alone for the destructive effects of his drug-trafficking operations on the persons and community involved, despite evidence that others were involved in drug trafficking at the subject house, and points out that the effects over which the trial court expressed concern are common results of drug trafficking in general. It was the trial court's task to decide defendant's sentence on the basis of his individual behavior in relation to the sentencing offense, and the court discussed at length the characteristics particular to defendant, the sentencing offense, and decided the matter accordingly. Defendant has not demonstrated that the trial court improperly applied the particular facts of the crime, or of defendant's conduct, in determining the departure sentence.

For these reasons, we conclude that the trial court properly established by reference to matters of record that its departure sentence was "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *Steanhouse*, 500 Mich at 474.

---

[2] "When calculating the sentencing guidelines, a court may consider all record evidence, including the contents of a PSIR." *People v McChester*, 310 Mich App 354, 358; 873 NW2d 646 (2015). Defendant does not dispute the contents of the PSIR, and does not argue that his sentence was invalid because it was based on inaccurate information.

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Kathleen A. Feeney