*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

UNPUBLISHED
January 18, 2024

v

LARRY WILLIAM SHEPARD,

        Defendant-Appellant.

No. 365699
Barry Circuit Court
LC No. 2022-000472-FH

Before: M. J. KELLY, P.J., and MARKEY and CAMERON, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the sentence imposed after he pleaded guilty to two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13 years of age) and MCL 750.520c(2)(b) (defendant over 17 years of age). The trial court sentenced defendant, as a second-offense habitual offender, MCL 769.10, to serve 120 to 270 months' imprisonment. We affirm.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

This case arose from two separate incidents that occurred over a 14-month period in which defendant sexually touched the victim. Defendant has a history of criminal sexual-assault offenses. In 1986, defendant was convicted on five counts of CSC-II, for which he served his full term of imprisonment.

The trial court noted the recommended guidelines minimum sentence was just 12 to 30 months' imprisonment, but sentenced defendant to concurrent terms of 120 to 270 months in prison. This appeal followed.

---

[1] *People v Shepard*, unpublished order of the Court of Appeals, entered May 31, 2023 (Docket No. 365699).

## II. PROPORTIONALITY OF SENTENCE

Defendant argues the out-of-guidelines sentence imposed by the trial court was disproportionate and unreasonable. He asks this Court to reverse the judgment of sentence and remand the case to the trial court for resentencing. We disagree.

## A. STANDARD OF REVIEW

"A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). The principle of proportionality requires that the sentence imposed be proportional to "seriousness of the circumstances surrounding the offense and offender." *People v Posey*, ___ Mich ___, ___; ___ NW2d ___ (2023) (Docket No. 162373); slip op at 3-4.

## B. LAW AND ANALYSIS

In implementing the principle of proportionality, a sentencing court should consider "where, on the continuum from the least to the most serious situations, an individual case falls and by sentencing the offender in accordance with this determination." *People v Milbourn*, 435 Mich 630, 654; 461 NW2d 1 (1990). In many cases, the statutory guidelines are a "useful tool" in fashioning a proportional sentence because these guidelines "embody the principle of proportionality . . . ." *People v Dixon-Bey*, 321 Mich App 490, 524; 909 NW2d 458 (2017) (quotation marks and citation omitted). But, this Court has provided three primary factors to consider when determining "whether a departure sentence is more proportionate than a sentence within the guidelines range . . . ." *Id*. at 525. These factors include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lawhorn*, 320 Mich App 194, 207; 907 NW2d 832 (2017) (citation and quotation marks omitted).]

When a sentencing court departs from the recommended guideline sentence, it "must justify the sentence imposed in order to facilitate appellate review . . . ." *Dixon-Bey*, 321 Mich App at 525 (quotation marks and citation omitted). This means the court must provide "an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been . . . ." *Id*. (quotation marks and citation omitted).

Defendant's minimum sentence was 120 months' imprisonment. This is a departure from the recommended minimum guideline range, which was 12- to 30-months' imprisonment.[2] The trial court in this case cited several reasons in support of its departure sentence.

The trial court noted that the guidelines did not account for defendant's earlier sexual-assault convictions. It specifically focused on prior record variable (PRV) 1, high-severity felony convictions. MCL 777.51(1). In 1986, defendant was convicted of five-counts of CSC-II, for which he was discharged after serving his full, 15-year term of imprisonment. Ordinarily, earlier convictions for CSC-II would be considered high-severity felonies, and therefore accounted for under PRV 1. MCL 777.51(2); MCL 777.16y. But, under MCL 777.50, sentencing courts should not "use any conviction . . . that precedes a period of 10 or more years between the discharge date from a conviction . . . and the defendant's commission of the next offense resulting in a conviction." Because defendant's discharge date from his earlier convictions exceeded this 10-year rule, they were not accounted for in scoring PRV 1.

The trial court also cited to the psychological impact to the victim in this case to support its departure from the guidelines. It stated:

> [T]he seriousness of [the] crime. Other than murder or . . . rape, criminal sexual conduct is right up there. That . . . is bad as it gets because . . . this really messes people up. I had a case just the other day where a . . . young man had been assaulted by his grandfather and he didn't say anything, it didn't come out for 20 years, and now . . . he and his family wonder why his life has been the way it has been. This could scar a person forever. Pray that it doesn't, that somehow they're able to overcome this, but the seriousness of the crime is off the charts.

According to defendant, the trial court exaggerated the potential impact to the victim in this case. Defendant does not believe that this crime was "as bad as it gets." Defendant says:

> Being touched in her private areas on two occasions by a sick old man may scar [the nine-year-old victim] for life, or it may be something she just shrugs off. Every person is different. Is it worse to get touched on your underwear above your private parts, or slugged in the face? I'll take the former.

Courts shall assess 10 points for offense variable (OV) 4 where an offense involves a "[s]erious psychological injury requiring professional treatment [that] occurred to a victim[.]" MCL 777.34(1)(a). Further, OV 10 concerns "exploitation of a vulnerable victim." MCL 777.40(1)(b). Under this variable, 10 points are assessed when the defendant "exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status[.]" The trial court assessed the maximum-allowable 10 points for each of these offense variables.

---

[2] The 270-month maximum did not exceed the statutory maximum for each conviction. See MCL 750.520c(1)(a); MCL 750.520c(2)(b); MCL 769.10.

-3-

But, Michigan courts have recognized that the guidelines cannot always capture the full psychological anguish suffered by young victims at the hands of their assailants. See *People v Smith*, 482 Mich 292, 298; 754 NW2d 284 (2008); *Lawhorn*, 320 Mich App at 210-211. Circumstances such as the victim's relationship with the perpetrator and the period of abuse may justify a departure from the guidelines. *Smith*, 482 Mich at 296; *Lawhorn*, 320 Mich App at 207. The record in this case reflects that the victim was friends with defendant's granddaughter, and she occasionally spent the night at defendant's home. Both incidents of sexual assault occurred when the victim stayed the night at defendant's house, and the sexual contact occurred over a 14-month period. The victim also told investigators that the assaults did not "feel good" and "that it made her feel sick to her stomach and weird." Given this information, the trial court did not abuse its discretion in using the potential psychological impact to the victim as justification for the departure sentence.

Finally, the trial court also relied on defendant's chances at recidivism to justify the departure sentence. It stated:

> No rehabilitation, recidivism, of course he did it again . . . . I'm sorry . . . but there's no way Mr. Shepard should be out again. He should die in prison, and I don't mean that mean, I mean it to protect society. In most cases I deal with I'm trying to work with the person to help them get better. In some cases, like this, my job isn't to worry about Mr. Shepard at all, it's to worry about who might be the next victim.

Defendant argues on appeal that these statements demonstrate the court's "personal disgust" of defendant's conduct and that the trial court's goal was that defendant would "die in prison." Contrary to these assertions, the trial court's remarks were based on objective information that defendant had previously committed sexually deviant acts against children, he had sexually assaulted another child in this case, and therefore it was likely defendant would do it again. "[R]epeated offenses and failures at rehabilitation . . . constitute an acceptable justification for an upward departure." *People v Horn*, 279 Mich App 31, 44-45; 755 NW2d 212 (2008). The trial court's statement that defendant should "die in prison" arose from the reasonable conclusion that, based on defendant's history, he would continue to perpetrate sexual assaults on children if he were released from prison. Therefore, the trial court was justified in imposing a sentence that departed from the guidelines, and did not abuse its discretion.

Affirmed.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Thomas C. Cameron