*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* GOULD, Minors.

UNPUBLISHED
March 10, 2026
12:04 PM

Nos. 375986; 376069
Muskegon Circuit Court
Family Division
LC No. 22-005331-NA

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

In these consolidated appeals,[1] respondent-mother and respondent-father challenge the trial court's termination of their parental rights to the minor children, JG1 and JG2,[2] under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist) and (j) (reasonable likelihood of harm if children returned to parents). We affirm.

## I. FACTUAL BACKGROUND

Petitioner, the Department of Health and Human Services (DHHS), first petitioned the court in November 2022 after newborn JG2 tested positive for methamphetamine at birth. Mother admitted that she used methamphetamine on the day she went into labor and again upon discharge from the hospital. At that time, she was homeless, unemployed, and on parole. She had an extensive history of Children's Protective Services (CPS) involvement dating back to 2006. In total, mother has eight children. Her eldest children were placed in a guardianship until they reached the age of majority. Mother had not seen either child in five years. Her parental rights to two additional children were terminated in 2013, following substantiated allegations of substance

---

[1] This Court consolidated the appeals "to advance the efficient administration of the appellate process." *In re Gould*, unpublished order of the Court of Appeals, entered June 24, 2025 (Docket Nos. 375986, 376069).

[2] Because the minor children share identical initials, we refer to them as JG1 (the older child) and JG2 (the younger child).

abuse and neglect. Another two of her children were placed in guardianships after she tested positive for methamphetamine in a 2016 investigation.

The trial court removed JG1 and JG2 from mother's care but allowed placement with father pursuant to a safety plan. That safety plan expressly prohibited mother from residing in the home and required that any parenting time between mother and the children be supervised. The safety plan further required that father remain alert and capable of supervising any contact. But within months, CPS made unannounced visits to father's home that revealed serious concerns. During those visits, caseworkers testified to detecting a strong chemical odor throughout the home. The windows were covered with cardboard, preventing visibility from outside. A jug of acetone was observed on the stairs. The home was cluttered, and an attic door was padlocked and screwed shut. During one visit, mother answered the door and appeared to be alone with the children while father was asleep in a bedroom. Mother again admitted to using methamphetamine every four to five days but refused to complete a drug screen. On some occasions, unknown adults were present in the home. Mother and father additionally refused CPS requests to inspect certain portions of the home. Given these circumstances and mother's admitted ongoing substance use, the children were removed from father's care and placed with Amber Ritchey, who was identified as fictive kin of the parents.[3] Police officers who responded to assist with removal likewise testified to a strong chemical odor consistent with possible methamphetamine production.

At an April 2023 adjudication trial, the trial court declined to take jurisdiction over father and returned the children to his care. The court did adjudicate mother. The return to father occurred in part because no direct evidence established active methamphetamine manufacturing at that time, and father represented that he would comply with a safety plan and court directives. However, in November 2023, a court-appointed special advocate (CASA) encountered mother inside father's home in direct violation of court orders. Father denied her presence. When DHHS arrived with law enforcement to remove the children, father initially refused entry. JG1 could not immediately be located and was found with Ritchey the following day. Ritchey claimed that she had picked up JG1 the day before and that she was not aware of the removal order. In April 2024, father pleaded to violating the trial court's order by allowing unauthorized contact between mother and the children.

The case continued for nearly two and a half years. Over that time, mother's participation in court-ordered services was inconsistent. She failed to complete a psychological evaluation, continued to test positive for methamphetamine, refused drug screenings, failed to secure stable housing or employment, and ceased participating in supervised parenting time altogether. Although mother briefly entered a substance abuse treatment program, she did not complete the program. Father likewise failed to meaningfully engage in services. Although he completed one parenting class, he did not complete additional recommended programming. He tested positive for methamphetamine in May 2024. Caseworkers testified that he was often hostile and difficult to reach. He barred a CASA from his property. He also made statements referencing knowledge

---

[3] Mother's counsel stated that Ritchey was mother's cousin. Ritchey clarified at the termination hearing that her cousin was married to father's nephew.

of the judge's residence and vehicle, suggesting that he might go to the judge's house, and admitted that he had driven by the foster care placement home.

After extended review hearings, DHHS filed a supplemental petition for termination in January 2025. Following a two-day termination trial in May 2025, the trial court terminated both parents' rights under MCL 712A.19b(3)(c)(*i*) and (j). These appeals followed.

## II. FATHER'S APPEAL

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Father first argues that he was denied the effective assistance of counsel. We disagree.

"[A]lthough child protective proceedings are not criminal in nature, where the right to effective counsel arises from the Sixth Amendment, the Due Process Clause indirectly guarantees effective assistance of counsel in the context of child protective proceedings." *In re HRC*, 286 Mich App 444, 458; 781 NW2d 105 (2009). "A claim of ineffective assistance of counsel is a mixed question of law and fact." *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022) (quotation marks and citation omitted). We review a trial court's factual findings for clear error and "the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. (quotation marks and citation omitted). Where, as here, no evidentiary hearing on the issue was held, we review a claim of ineffective assistance of counsel for errors apparent on the record. *Id*.

"To establish ineffective assistance of counsel, defendant must first show that (1) his trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Id*. at 134 (quotation marks and citation omitted). Counsel is presumed to be effective, and the party claiming ineffective assistance bears the burden of proving otherwise. *Id*.

Father asserts that his first counsel of record, Michael Flynn, misunderstood the procedural posture of the case, failed to communicate with him, and inadequately pursued parenting time. The record does not support these claims.

Flynn initially represented father at the April 2023 adjudication trial, during which the trial court declined to take jurisdiction over father and returned the children to his care. After father permitted mother to have unauthorized contact with the children and DHHS filed a new petition seeking removal, Flynn was reappointed. At a November 2023 preliminary hearing on the amended and supplemental petitions, Flynn asked the court to clarify the procedural posture and the nature of the newly filed pleadings. Those questions were reasonable. Flynn had previously been dismissed from the case following the court's earlier decision not to exercise jurisdiction over father. Flynn was entitled to ensure clarity regarding the new allegations and the stage of proceedings. The record reflects appropriate advocacy in a case that had materially shifted posture, rather than Flynn's confusion, as father argues.

Father also argues that Flynn repeatedly referenced the earlier adjudication because he misunderstood the proceedings. The record suggests otherwise. Flynn's references to the prior adjudication appear to have been a deliberate effort to remind the trial court that it had previously declined to take jurisdiction over father and had found insufficient evidence to support removal at that time. Such arguments fall squarely within the realm of trial strategy. That the strategy ultimately did not prevail does not render counsel's performance objectively unreasonable. See *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001) ("That the strategy . . . ultimately failed does not constitute ineffective assistance of counsel.").

Father also argues that attorney Flynn failed to communicate with him. Flynn stated on the record at the August 2024 dispositional hearing that his failure to meet with father regarding the case service plan was "not for a lack of trying." Nothing in the record suggests that Flynn abandoned communication efforts. To the contrary, Flynn actively advocated on father's behalf throughout the proceedings. He sought clarification of petitions, requested parenting time at multiple hearings, and corrected the referee's statement regarding the length of time the children had been in care. Accordingly, father cannot establish the factual predicate for his claim. See *In re LT*, 342 Mich App at 134.

Father likewise cannot establish that Flynn's performance prejudiced him or affected the outcome of the case. The basis for termination rested on father's own conduct. Even assuming arguendo that Flynn could have pursued additional objections or motions, there is no reasonable probability that the outcome would have differed. The trial court's findings with regard to termination were based on father's substantial noncompliance and ongoing risk to the children. The trial court was presented with testimony regarding father's prior criminal history, including a prior domestic-violence conviction and substance-related offenses, as well as evidence that he permitted mother to have unauthorized contact with the children in violation of court orders. The court also heard testimony regarding JG1's disclosure of domestic altercations between the parents and father's continued resistance to agency involvement. In light of this record, father cannot demonstrate a reasonable probability that additional objections, different arguments, or further consultation with counsel would have altered the outcome of the termination proceedings. Accordingly, father has not satisfied his burden to establish prejudice. *Id*.

Father also argues that attorney Dawn Goodwin, who substituted for attorney Flynn during the termination hearing, was not knowledgeable enough about the case to effectively represent him. Our review of the record indicates that Goodwin's performance did not fall below an objective standard of reasonableness. Goodwin actively participated in the termination hearing, raised objections to the introduction of evidence, and cross-examined witnesses regarding the nature and purpose of services offered to father. Father specifically points out that Goodwin improperly cited MCR 3.977(F)(1) in objecting to certain evidence. But even assuming that the rule did not support her precise framing, the substance of her objection was that the court should not rely on nonadjudicated issues. That was a legally grounded objection. The fact that the trial court overruled the objection does not render it unreasonable. An attorney is not ineffective merely because the court rejects a strategic evidentiary argument. See *Kevorkian*, 248 Mich App at 414-415.

-4-

The record further demonstrates that Goodwin was sufficiently familiar with the case to engage meaningfully with the evidence. She questioned the caseworker about father's participation in parenting classes and the rationale for additional services, thereby attempting to cast doubt on whether the services were appropriately tailored. Father specifically claims that Goodwin failed to establish that he participated in a psychological evaluation. But father has not identified any documentation in the record substantiating completion of such an evaluation, nor has he demonstrated that counsel had access to evidence that she unreasonably failed to present.

Father also asserts that Goodwin mentioned a potential witness who was not ultimately called. Without identifying the witness, proffering the substance of the anticipated testimony, or demonstrating how the testimony would have altered the outcome, father has failed to establish either deficient performance or prejudice. Decisions regarding which witnesses to call are presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). We will not second-guess those decisions on appeal absent a showing that the strategy was unsound. *People v Abcumby-Blair*, 335 Mich App 210, 237; 966 NW2d 437 (2020). Father has made no such showing.

The record also does not demonstrate that father was prejudiced by Goodwin's performance. The trial court's findings were grounded in father's ongoing noncompliance and conduct. As earlier noted, given the substantial evidence supporting termination, father cannot establish that Goodwin's alleged shortcomings undermined confidence in the outcome of the proceedings. Accordingly, father's claim of ineffective assistance lacks merit.

B. REASONABLE EFFORTS

Father also argues that the trial court erred by finding that DHHS made reasonable efforts toward reunification. We disagree.

To preserve an argument regarding reasonable efforts, a respondent must object to the services at the time that they are offered. *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). "However, even if a parent does not object or otherwise indicate that the services provided were inadequate when the initial case services plan is adopted, such an objection or challenge may also be timely if raised later during the proceedings." *In re Atchley*, 341 Mich App 332, 337; 990 NW2d 685 (2022). Father never challenged the adequacy of the services offered during the proceedings below. Therefore, the issue is unpreserved. *In re Frey*, 297 Mich App at 247. This Court reviews unpreserved claims for "plain error affecting substantial rights." *In re MJC*, 349 Mich App 42, 47; 27 NW3d 122 (2023). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 48 (quotation marks and citation omitted). "Generally, an error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *Id*. (quotation marks and citation omitted).

DHHS must make reasonable efforts to reunify a family before a parent's rights may be terminated. *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017); see also MCL 712A.19a(2). "As part of these reasonable efforts, the Department must create a service plan outlining the steps that both it and the parent will take to rectify the issues that led to court

involvement and to achieve reunification." *Id*. at 85-86. However, there is "a commensurate responsibility on the part of [the parent] to participate in the services that are offered." *In re Frey*, 297 Mich App at 248. The parent must "demonstrate sufficient compliance with or benefit from those services specifically targeted to address the primary basis for the adjudication." *Id*.

Here, DHHS offered father parenting classes, trauma-informed therapy, and a psychological evaluation. The service plan also contemplated domestic-violence or anger-management programming. Caseworkers testified that these services were discussed with father as part of the effort to address the barriers that led to court involvement. A caseworker also reported that she spoke with father about services. Caseworkers attempted further contact with father throughout the case, but he did not consistently communicate. The record reflects that father did not engage in any services beyond the parenting class and, potentially, the beginning of a psychological evaluation. Although father's parenting time was suspended in June 2024 and services were formally suspended in November 2024, father did not meaningfully participate in services even before those dates. The record does not demonstrate plain error in the trial court's reasonable-efforts determination.

### III. MOTHER'S APPEAL

### A. STATUTORY GROUNDS

Mother first argues that the trial court erred by terminating her parental rights under MCL 712A.19b(3)(c)(*i*) and (j).[4] We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re Jackisch/Stamm-Jackisch*, 340 Mich App 326, 333; 985 NW2d 912 (2022) (quotation marks and citation omitted). This Court reviews "for clear error the trial court's finding that there are statutory grounds for termination of a respondent's parental rights." *In re Atchley*, 341 Mich App at 343. A finding is clearly erroneous if the reviewing court is "left with a firm and definite conviction that a mistake has been made." *In re Williams*, 333 Mich App 172, 178; 958 NW2d 629 (2020).

Under MCL 712A.19b(3)(c)(*i*), a trial court may terminate a respondent's parental rights if "182 days or more have elapsed since the issuance of an initial dispositional order, and . . . . the conditions resulting in adjudication remain present and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." Here, more than two years elapsed between the initial dispositional order and the termination hearing. The relevant

---

[4] Mother argues that she is entitled to reversal because the trial court denied her request for an adjournment of the termination proceedings when she entered treatment the day before trial began. Mother did not include this issue in her statement of questions presented on appeal. She likewise failed to present meaningful argument in support of the claim. We thus conclude that the issue is abandoned. See *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 516; 838 NW2d 915 (2013).

inquiry, therefore, is whether the adjudicated conditions remained present and whether they were likely to be rectified within a reasonable time.

The conditions leading to adjudication included mother's chronic methamphetamine use, lack of housing, lack of income, prior terminations, and inability to provide safe care for the children. The record also reflected concerns regarding instability in the home environment and the children's exposure to ongoing conflict between the parents. JG1 disclosed physical altercations between the parents. Mother later acknowledged that domestic conflict had occurred. Thus, the adjudication encompassed not only substance abuse and housing instability, but also the inability to provide a safe and stable home environment free from ongoing volatility.

The record demonstrates that these conditions persisted. Mother continued to test positive for methamphetamine during the pendency of the case and refused multiple drug screens. She failed to complete a psychological evaluation. She did not complete sustained substance abuse treatment. She did not verify that she had obtained stable housing or income. Although the record indicates that she checked into treatment the day before trial, that last-minute effort does not erase a nearly two-year pattern of relapse and noncompliance. The statute does not require perfection, but it does require meaningful progress sufficient to support a reasonable belief that reunification will occur within a reasonable time. Given the children's young ages and the duration of these proceedings, the trial court did not clearly err in concluding that the adjudicated barriers remained and were unlikely to be rectified within a reasonable period.

Mother nevertheless argues that her methamphetamine use did not affect the children. She maintains that termination, particularly as to JG1, was improperly premised on anticipatory neglect. She further relies on *In re LaFrance*, 306 Mich App 713; 858 NW2d 143 (2014), and *In re Richardson*, 329 Mich App 232; 961 NW2d 499 (2019), to contend that drug use alone, absent proof of direct harm, cannot support termination.

Mother's assertion that her methamphetamine use did not affect the children is factually inaccurate. JG2 was born positive for amphetamines and methamphetamine, and mother admitted to using methamphetamine on the day she went into labor. Moreover, the record establishes that mother continued to test positive for methamphetamine during the pendency of the case, with only two negative drug screens and multiple refusals. Thus, this is not a case involving isolated prenatal drug use followed by sustained sobriety. It is a case of ongoing substance abuse extending nearly two years beyond adjudication.

The statutory inquiry under MCL 712A.19b(3)(c)(*i*) is not whether the precise harm that occurred at birth can recur in identical form. Rather, it is whether the underlying condition continues to pose a risk to the children. The trial court's findings were grounded in the continued presence of mother's methamphetamine use, along with housing and financial instability. That contention overlooks both mother's drug use and the instability that persisted throughout the case.

Additionally, mother's reliance on *LaFrance* is misplaced. In that case, this Court held that "drug use alone, in the absence of any connection to abuse or neglect, cannot justify termination solely through operation of the doctrine of anticipatory neglect." *LaFrance*, 306 Mich App at 731. Here, however, mother's substance abuse resulted in direct harm to JG2 and continued

throughout the proceedings. Termination was not based solely on anticipatory reasoning but on the continued existence of multiple adjudicated barriers more than 182 days after disposition. The doctrine of anticipatory neglect permits a court to consider how a parent's treatment of one child informs the risk to another. *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). It does not require a court to wait until each child suffers individualized harm before acting. Given mother's ongoing substance abuse and unresolved instability, the trial court did not clearly err in concluding that both children remained at risk.

Mother's reliance on *Richardson* is likewise unavailing. There, this Court vacated a termination order premised on speculative concerns regarding lawful medical marijuana use in the absence of evidence of harm or impairment. *Richardson*, 329 Mich App at 255-257. By contrast, this record reflects ongoing methamphetamine use, repeated positive or refused drug screens, failure to verify sobriety, unstable housing, and failure to complete recommended services. The trial court's findings were therefore supported by clear and convincing evidence of persistent adjudicated conditions. Accordingly, the trial court did not clearly err in finding that the conditions leading to adjudication remained present and were unlikely to be rectified within a reasonable time considering the children's ages. Termination was proper under MCL 712A.19b(3)(c)(*i*).[5]

## B. BEST INTERESTS

Mother also argues that the trial court erred by finding that termination was in the children's best interests. We disagree.

We review for clear error the trial court's determination that termination of parental rights is in the children's best interests. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

"If a trial court finds that a single statutory ground for termination has been established by clear and convincing evidence and that it has been proven by a preponderance of the evidence that termination of parental rights is in the best interests of a child, the court is mandated to terminate a respondent's parental rights to that child." *In re Mota*, 334 Mich App 300, 320; 964 NW2d 881 (2020). The focus at this stage shifts from the parent to the child. *In re Atchley*, 341 Mich App at 347. The trial court should consider a variety of factors when determining best interests, including:

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's

---

[5] Because only one statutory ground need be established by clear and convincing evidence to terminate a respondent's parental rights, we need not address mother's arguments related to MCL 712A.19b(3)(j). *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011).

visitation history with the child, the children's well-being while in care, and the possibility of adoption. [*In re White*, 303 Mich App at 713-714 (quotation marks and citations omitted).]

When a case involves more than one child, "the trial court has a duty to decide the best interests of each child individually." *In re Olive/Metts*, 297 Mich App 35, 42; 823 NW2d 144 (2012).

In this case, the trial court did not err by finding that termination was in the children's best interests. The trial court properly considered each child separately during its best-interest determination, including noting how the children were doing in their placements and how long they had been in care. There is no evidence that mother had a bond with either child, considering that, by the time of the May 2025 termination proceedings, mother had not seen the children since approximately November 2023. Mother did not consistently engage in services, communicate with caseworkers, or show any benefit throughout the case. The children had been in care for more than two years by the time of termination. Given their young ages, they required stability, consistency, and permanency within a meaningful time frame. The record reflects no verified sobriety, no stable housing, and no demonstrated benefit from services sufficient to support reunification within a reasonable period. See *In re Atchley*, 341 Mich App at 346-347. The trial court did not clearly err in concluding that the children's need for permanence and finality outweighed any speculative possibility of future improvement.

Mother also argues that the trial court erred by considering domestic violence when making its best-interest determination because domestic violence was not an adjudicated issue or included in the supplemental petition. However, the trial court could properly consider respondents' history of domestic violence when making its best-interest determination. See *In re White*, 303 Mich App at 714. The record reflects that during the pendency of the case, concerns were raised regarding conflict between the parents, including JG1's disclosure of a physical altercation between mother and father. Although domestic violence was not an independent statutory ground for termination, the trial court properly considered the children's exposure to instability and conflict in assessing their need for safety and permanence. The reference to domestic conflict occurred within the broader best-interests analysis, where the court assessed the children's trauma history and their need for a stable, predictable home environment. The court expressly noted that the children had suffered trauma and required a caregiver capable of providing a safe and consistent environment.

Even were we to assume that the court gave some weight to evidence of domestic violence, that consideration was proper in context. Exposure to domestic conflict is relevant to a child's emotional safety and stability. A best-interests determination would be incomplete if the court ignored evidence bearing on the home environment to which the children might be returned. Moreover, any potential emphasis on domestic violence would not warrant reversal. The record contains ample independent support for the court's best-interest ruling. Accordingly, the trial court did not clearly err in considering the broader context of instability, including domestic violence, when determining that termination was in the children's best interests.

Mother also argues that termination was improper because placement with relatives was available and because guardianship was a less restrictive alternative. Relative placement is a factor that the courts must consider, but it is not dispositive. See *In re White*, 303 Mich App at 714. At

the time of termination, the children were placed with Ritchey, who was fictive kin to the parents. Ritchey expressed willingness to provide a permanent home. The trial court did not categorically refuse to consider guardianship, but noted that it had credibility concerns regarding Ritchey, particularly with regard to her prior testimony about the circumstances of JG1's whereabouts when law enforcement arrived at father's home to remove the children from his care. The court found inconsistencies between Ritchey's account and other record evidence, which, in the court's view, undermined confidence in her ability to provide full and reliable information to the agency and the court. Because guardianship requires ongoing court involvement and continued cooperation with court directives, the trial court was entitled to consider the proposed guardian's credibility. A trial court's credibility determinations are entitled to substantial deference on appeal. *In re BZ*, 264 Mich App at 296-297. On this record, the court did not clearly err in determining that guardianship was not a preferable alternative to termination. Further, the court did not clearly err by finding that termination was in the children's best interests.

Affirmed.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick